[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State v. Hoffman,* **Slip Opinion No. 2014-Ohio-4795.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4795

THE STATE OF OHIO, APPELLEE, *v*. HOFFMAN, APPELLANT.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State v. Hoffman,* **Slip Opinion No. 2014-Ohio-4795.]**

*Arrests—Warrants—Neutral and detached magistrate—Probable cause-determination—Affidavit that merely concludes that suspect committed a particular crime does not support finding of probable cause—Exclusionary rule does not apply when police act in objectively reasonable reliance on binding appellate predecent.*

(No. 2013-0688—Submitted April 8, 2014—Decided November 4, 2014.)

APPEAL from the Court of Appeals for Lucas County,

No. L-12-1262, 2013-Ohio-1082.

_____

SYLLABUS OF THE COURT

1.  A neutral and detached magistrate or other person authorized under Crim.R. 4(A)(1) must make a probable-cause determination before an arrest warrant can be issued.

2. A complaint or affidavit, offered as a basis for the issuance of an arrest warrant, does not support a finding of probable cause when it merely concludes that the person whose arrest is sought has committed a particular crime.

3. When the police conduct a search in objectively reasonable, good-faith reliance upon binding appellate precedent, the exclusionary rule does not apply.

_____

**LANZINGER, J.**

{¶ 1}   In this case, defendant-appellant, Brandon Hoffman, challenges the use of evidence obtained as the result of his arrest pursuant to three misdemeanor arrest warrants.  We agree with the trial court and court of appeals that the arrest warrants were issued improperly because there was no determination of probable cause.  However, we also agree that the remedy of suppression of the evidence obtained pursuant to these defective warrants is not available in this instance, because the officers relied in good faith upon a procedure that had been validated by the Sixth District Court of Appeals.  We therefore affirm the judgment of the court of appeals.

**Case Background**

{¶ 2}   On November 11, 2011, in Toledo Municipal Court, a Toledo Police detective filed three criminal complaints and requests for warrants to arrest, charging Brandon Hoffman with theft, criminal damaging, and "house stripping prohibited," all first-degree misdemeanors.  Each complaint cited the relevant statute, recited the statutory elements for the offense charged, and, in a brief narrative statement, identified the victim, the location of the offense, and the property taken or removed.  Based on the statements in the complaint, the deputy clerk issued the warrants.  Hoffman was notified by letter that he could avoid arrest by scheduling a court appearance before November 29.

**{¶ 3}** On November 26, 2011, Toledo police responded to a "call for service" to a residential address. Inside the residence, they found the dead body of Scott Holzhauer. A gun safe in an adjacent area was open. Neighbors stated that someone named Brandon had recently visited Holzhauer and had been interested in purchasing guns from him. When further information identified this Brandon as Brandon Hoffman, a computer check revealed that he had active misdemeanor arrest warrants.

**{¶ 4}** The police decided to execute the arrest warrants. At the address listed in the warrants, officers looked through a window and observed Hoffman lying on the floor inside, apparently sleeping. They knocked on the front door, and a man let them in. When they arrested Hoffman, they discovered a .45 caliber Ruger semi-automatic on the floor where Hoffman was lying. The gun was later identified as belonging to Holzhauer. Two cell phones were nearby, in plain view, and when an officer used her own phone to call Holzhauer's cell-phone number, one of the phones immediately rang. Based on this information, an affidavit for a search warrant was prepared and later executed, resulting in the collection of additional evidence.

**{¶ 5}** Hoffman was charged in a two-count indictment with aggravated murder in violation of R.C. 2903.01(B) and aggravated robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree. Hoffman challenged the legality of his arrest and filed a motion to suppress all evidence collected as a result of that arrest. Specifically, he contended that officers lacked a valid warrant to arrest him. In a supplement to his motion to suppress, he clarified that the arrest warrants were invalid because no probable-cause determination was made by anyone before the warrants were issued and because the criminal complaints on which the warrants were based contained on their face no information that would support a finding of probable cause.

**{¶ 6}** A suppression hearing was held. The trial court found that the officer who had obtained the three misdemeanor arrest warrants, Detective Kim Violanti, failed to submit any information from which the deputy clerk could have found the existence of probable cause on the three misdemeanor charges. The court also found that the Toledo Municipal Court's internal guidelines for handling complaints and warrants violated the United States and Ohio Constitutions. Nevertheless, the court concluded that it was bound by the precedent established in *State v. Overton*, 6th Dist. Lucas No. L-99-1317, 2000 WL 1232422 (Sept. 1, 2000). In *Overton*, the Sixth District Court of Appeals had established that a warrant, almost identical in form and substance to the ones at issue, complied with the requirements of Crim.R. 4(A)(1) and the Fourth Amendment. Because the officers who arrested Hoffman could not reasonably be expected to question this authority, the trial court determined that they did not deliberately, recklessly, or with gross negligence violate Hoffman's rights and that suppression would have no deterrent effect in this instance. The motion to suppress was denied.

**{¶ 7}** Nine days later, Hoffman withdrew his not-guilty plea and entered a plea of no contest to the two felony offenses charged in the indictment. The trial court found him guilty and sentenced Hoffman to life without parole for the aggravated murder and to 11 years' imprisonment for the aggravated robbery, to be served concurrently.

**{¶ 8}** Hoffman appealed to the Sixth District Court of Appeals. He argued that the trial court committed reversible error when it denied his motion to suppress, despite recognizing the obvious Fourth Amendment violation. He urged the appellate court to overrule its decision in *Overton*.

**{¶ 9}** The Sixth District Court of Appeals agreed with Hoffman that the "mere recitation of the statutory elements of the crime is not sufficient to support a finding that probable cause exists." 6th Dist. Lucas No. L-12-1262, 2013-Ohio-

1082, 989 N.E.2d 156, ¶ 17. It concluded that the misdemeanor arrest warrants were invalid due to the deputy clerk's admission that they were issued without any probable-cause determination. *Id.* at ¶ 16. The court of appeals recognized that its holding was inconsistent with *Overton* and overruled it to that extent. *Id.* at ¶ 19. Nevertheless, the Sixth District affirmed the trial court's decision to deny suppression because the officers acted in good-faith reliance on the validity of the warrants based on the information available to them at the time.

{¶ 10} Hoffman appealed to this court, and we accepted jurisdiction on the sole proposition of law: "There can be no good faith reliance on the validity of an arrest warrant issued without a magisterial finding of probable cause." 136 Ohio St.3d 1472, 2013-Ohio-3790, 993 N.E.2d 777.

## Analysis

*No warrant shall issue but upon probable cause*

{¶ 11} Hoffman argues that his rights under the United States and Ohio Constitutions were violated. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The language of Article I, Section 14 of the Ohio Constitution is virtually identical to the language in the Fourth Amendment, and we have interpreted Article I, Section 14 as affording the same protection as the Fourth Amendment. *State v. Robinette*, 80 Ohio St.3d 234, 238-239, 685 N.E.2d 762 (1997).

{¶ 12} The Fourth Amendment and Article I, Section 14 require probable cause to search or seize. And the Fourth Amendment has been interpreted to mean that probable cause must be determined by a neutral and detached magistrate rather than by an official of the executive branch whose duty is to enforce the law, to investigate, and to prosecute. *See Coolidge v. New Hampshire*, 403 U.S. 443, 450, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This requirement reflects "our basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government." *United States v. United States Dist. Court for E. Dist. of Michigan*, *S. Div.,* 407 U.S. 297, 317, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), citing Harlan, *Thoughts at a Dedication: Keeping the Judicial Function in Balance*, 49 A.B.A.J. 943, 944 (1963).

{¶ 13} We have recently addressed the importance of a neutral and detached magistrate in a case in which a detective from the Summit County Sheriff's Department submitted a complaint, request for an arrest warrant, and affidavit to a deputy clerk at Barberton Municipal Court who was also employed by the sheriff's department. *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965. The deputy clerk reviewed the documents, determined that probable cause existed, and issued an arrest warrant. The trial court denied the defendant's motion to suppress. The appellate court affirmed, finding that no evidence had been obtained as a result of the warrant while conceding that the warrant had been improperly issued. We agreed with the court of appeals that the warrant was invalid, stating:

> [T]he deputy clerk's dual position as a sergeant in the sheriff's department located in the same county served by the Barberton Municipal Court creates an inappropriate tension between the executive function of law enforcement and the judicial

function of determining probable cause. The deputy clerk's dual-capacity position blurs the separation and threatens the independence of the executive and judicial functions. Further, the dual-capacity position places the deputy clerk at risk of divided loyalties and conflicting duties * * *. The result is that the deputy clerk lacks the requisite neutrality and detachment to make the probable-cause determination necessary for issuing a valid warrant pursuant to Crim.R. 4(A)(1).

*Id.* at ¶ 19. We held that "[a] person acting in a dual capacity as deputy sheriff for a county and deputy clerk for a municipal court located in that same county is not a neutral and detached magistrate for purposes of determining whether probable cause exists for issuing an arrest warrant." *Id.* at syllabus. We were not called upon to opine on the validity of the probable-cause determination itself.

{¶ 14} The issuance of an arrest warrant is governed by Crim.R. 4(A)(1), which states:

If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.

The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for

> believing the source of the hearsay to be credible and for believing
> that there is a factual basis for the information furnished.

Thus, the purpose of a complaint or affidavit is to set forth sufficient information to enable the decisionmaker to personally determine from the facts whether it is likely that an offense has been committed by the named individual. A mere conclusory statement that the person whose arrest is sought has committed a crime is insufficient to justify a finding of probable cause. It is also not enough that probable cause may later be determined to exist. A neutral and detached magistrate or other person authorized under Crim.R. 4(A)(1) must make a probable-cause determination before an arrest warrant can be issued. *See Coolidge*, 403 U.S. at 450-451, 91 S.Ct. 2022, 29 L.Ed.2d 564.

*The Procedure Used in Obtaining Hoffman's Arrest Warrants*

{¶ 15} At the hearing on Hoffman's motion to suppress, evidence was presented on the procedure that Toledo police used to obtain an arrest warrant. According to Detective Violanti, Hoffman's arrest warrants were obtained in the usual way. On a form provided by the municipal court, the officer seeking a warrant would record the offender's name, address, and other identifiers, cite the statute that was violated, the name of the offense, its classification, and the date of the offense. A space was provided, beginning with the printed words, "TO WIT," in which the officer would type a description of the particular incident giving rise to the charge. The officer would sign the form and present it to the clerk, who would "look [it] over," take the officer's oath, and sign the form. In this case, along with the complaints for the warrant, the officer filed praecipes, which contained the victim's name and the names of the two witnesses.

**{¶ 16}** Hoffman's first warrant alleged theft:

The defendant did take, without the consent of the owner Lamar Pittmon, take [sic] siding, downspouts and gutters from the victims [sic] rental property at 337 Chapin Toledo, Ohio 43609 City of Toledo, Lucas County. [*See* Appendix A.]

**{¶ 17}** The second alleged criminal damaging:

The defendant did remove, dismantled [sic] siding, gutters, downspouts to a house at 337 Chapin Toledo Ohio 43609, this act caused substantial damage to the property [sic]. This was without the authorization of the owner/victim Lamarr Pittmon.City [sic] of Toledo Lucas County. [*See* Appendix B.]

**{¶ 18}** The third alleged "house stripping prohibited":

The defendant did, without permission or authorization from victim/owner Lamar Pittmon, take/ [sic] remove siding, downspouts and gutters from 337 Chapin Toledo, Ohio 43609 on or about 10/25 1 City of Toledo Lucas County. [*See* Appendix C.]

**{¶ 19}** All three complaints fail to identify the source of their information. They do not state that Violanti witnessed the offense. They do not explain how she came to believe that Hoffman had committed the misdemeanor offenses he was charged with. They are not accompanied by supporting affidavits. Rather, each complaint simply states that Hoffman violated every element of the

particular misdemeanor offense. Violanti testified at the suppression hearing that no one asked her *why* she concluded that Hoffman had committed the offenses.[1]

{¶ 20} The deputy clerk who signed and issued the three arrest warrants had been employed by the Toledo Municipal Court for 17 years. She testified that when an officer came in for a warrant, she would verify that the complaint included the offender's correct name and address, the violation codes, the charge, the offense classification, the date of the offense, a description of the offense, and the signature of the officer. But she also stated that she never asked an officer any questions. With regard to the warrants issued against Hoffman, the deputy clerk specifically testified that she did not make a probable-cause determination. When asked if she knew what probable cause is, she said, "no, I don't." She denied that it was part of her job responsibility to make a finding of probable cause. She simply gave the officer the oath, issued the warrants, and placed them into the computer system.

{¶ 21} Also admitted into evidence at the suppression hearing was an internal document used by Toledo Municipal Court deputy clerks as a guide for swearing in affidavits. Deputy clerks are instructed as follows:

1. When an officer or complainant brings an affidavit to the counter, you should quickly look over the affidavit for the following items:

• Type of affidavit (In Custody, Open Warrant or Summons to Issue)

---

[1] The trial court commented in a footnote in its decision that it believed that "a determination of probable cause could have been found by the issuing authority had the Detective included in her affidavit or sworn statement the source of her conclusion to which she testified that Brandon Hoffman committed the offenses charged."

- Name and address of the defendant

- Code source is checked (TMC or ORC)

- RB No. (mostly used by TPD)

- Code No. (the violation number such as 537.19A, etc.)

- Charge (violation description such as Domestic Violence)

- Classification (such as M-2)

- Offense Date

- Description of the incident

- Signature of the officer or complainant (the defendant's copy also needs to be signed).

If the officer or complainant is filing the affidavit at the counter, you may let him or her know if something is missing as a courtesy. Once the affidavit is clerked in, it cannot be altered. This means you cannot call an officer to come back if something is missing. You also must accept all affidavits even if they are not complete.

2. Ask the Officer / Complainant to raise his or her right hand and say:

"*Do you swear that the statements made in this affidavit are true and is that your true and legal signature.*"

3. Sign the affidavit on the signature line at the bottom of the affidavit. * * *

4. Time Stamp and Seal the affidavit.

(Italics sic.)

{¶ 22} Nowhere in the guidelines are the clerks instructed about making a finding of probable cause. The former supervisor responsible for creating these

guidelines also testified that during her 17 years of swearing in criminal complaints, she did not know what probable cause was and had never made a probable-cause determination.

{¶ 23} A complaint or affidavit that merely concludes that the person whose arrest is sought has committed a crime is not sufficient to support a finding that probable cause exists for an arrest warrant. *Giordenello v. United States*, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). "Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). It is clear from the testimony and documentary evidence offered at the suppression hearing that Hoffman's misdemeanor warrants were issued without a probable-cause determination and therefore are invalid.

*Suppression of Evidence is Not an Automatic Remedy*

{¶ 24} Having concluded that Hoffman's arrest warrants were issued without a probable-cause determination in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, we must determine whether he is entitled to exclusion of the evidence obtained as a result of the service of the invalid warrants. The United States Supreme Court has stated that "suppression is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 137, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands * * *." *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Instead, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Whether the

exclusionary rule's remedy of suppression is appropriate in a particular context is a separate analysis from whether there has been a Fourth Amendment violation. *Arizona v. Evans*, 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), quoting *Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**{¶ 25}** When applying the exclusionary rule, a court must also consider the substantial social costs. *Leon* at 907.

> Exclusion exacts a heavy toll on both the judicial system and society at large. *Stone* [*v. Powell*], 428 U.S. [465, 490-491], 96 S.Ct. 3037, [49 L.Ed.2d 1067 (1976)]. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. *Ibid.* And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. See *Herring*, supra, at 141 * * *. Our cases hold that society must swallow this bitter pill when necessary, but only as a "last resort." *Hudson* [*v. Michigan*, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).] For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs. See *Herring*, supra, at 141 * * *; *Leon*, supra, [468 U.S.] at 910, 104 S.Ct. 3405, 82 L.Ed.2d 677.

*Davis v. United States*, ___ U.S. ___, 131 S.Ct. 2419, 2427, 180 L.Ed.2d 285 (2011).

**{¶ 26}** The issue therefore becomes whether suppression of the evidence in this case will create a sufficient deterrent effect to prevent future violations of the Fourth Amendment and Article I, Section 14.

**{¶ 27}** Hoffman concedes that the exclusionary rule "is not an individual right," *Herring,* 555 U.S. at 141, 129 S.Ct. 695, 172 L.Ed.2d 496, and that it

"applies only where it ' " result[s] in appreciable deterrence," ' " *id.*, quoting *Leon* at 909. He argues, however, that the Toledo Police Department's 17-year pattern of submitting bare-bones complaints to be rubber-stamped by the Toledo Municipal Court without any probable-cause determination was so reckless and grossly negligent as to justify the exclusion of evidence in this case.

{¶ 28} The state counters that the exclusionary rule was designed to exclude evidence obtained as the result of *police* misconduct and that it should not be applied to hold law enforcement responsible for the errors of judicial employees. The state contends that the officers relied in good faith on the arrest warrants and could not have reasonably been expected to question their validity when the procedure followed in obtaining those warrants had been approved by the court of appeals in the relevant jurisdiction.

*The Good-Faith Exception*

{¶ 29} The good-faith exception to the exclusionary rule was officially recognized by the United States Supreme Court in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, and adopted in Ohio in *State v. Wilmoth*, 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986). The exception provides that the exclusionary rule should not be applied to bar use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *Leon* at 918-923, 926.

{¶ 30} In *Leon*, a confidential informant of unproven reliability told police that he knew where a large drug-trafficking operation was located and that he had personally witnessed a drug sale at that location, a private residence. Police launched an extensive investigation and eventually applied for a warrant to search several addresses and vehicles. The application was reviewed by several deputy district attorneys, and a facially valid search warrant was issued by a state court judge. Large quantities of drugs and other evidence were seized pursuant to the

warrant, and the defendants filed motions to suppress. Both the district court and circuit court concluded that the affidavit was insufficient to establish probable cause, but declined to adopt a good-faith exception to the exclusionary rule.

{¶ 31} The United States Supreme Court was presented with the sole question of whether the exclusionary rule should be modified to create a good-faith exception. The court balanced the benefits and costs of suppressing evidence obtained in violation of the Fourth Amendment. *Id.* at 907. It noted that the purpose of the exclusionary rule is to deter unlawful police conduct. *Id.* at 916. But where an officer's actions are objectively reasonable, the court concluded that there is little value in excluding the evidence, because applying the exclusion will not affect how the officer acts:

> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." [*Stone*], 428 U.S. at 498, 96 S.Ct. [3037, 49 L.Ed.2d 1067] (Burger, C.J., concurring). Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

(Footnotes omitted.) *Leon*, 468 U.S. at 920-921, 104 S.Ct. 3405, 82 L.Ed.2d 677.

**{¶ 32}** Although the existence of a warrant normally signifies that a law-enforcement officer has acted in good faith, this is not always the case. In *Leon,* the United States Supreme Court cautioned that an officer's reliance on the warrant must be objectively reasonable:

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. [590,] 610-611, 95 S.Ct. [2254, 45 L.Ed.2d 416 (1975)] (Powell, J., concurring in part); see *Illinois v. Gates*, supra, 462 U.S. at 263-264, 103 S.Ct. [2317, 76 L.Ed.2d 527] (White, J., concurring in the judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i. e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Cf.

16

> *Massachusetts v. Sheppard*, 468 U.S. [981,] at 988-991, 104 S.Ct.
> [3424, 82 L.Ed.2d 737 (1984)].

*Leon*, 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677.

**{¶ 33}** The United States Supreme Court has extended the *Leon* good-faith exception to the execution of invalid arrest warrants. *Herring*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496; *Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34.

**{¶ 34}** Hoffman asserts that there can be no good-faith reliance on the arrest warrants in this case because the deputy clerk had wholly abandoned her judicial role as a neutral and detached magistrate when she failed to make a probable-cause determination when issuing the arrest warrants. We do not agree. There is no evidence in this case that the deputy clerk was anything other than a neutral and detached magistrate.

**{¶ 35}** The facts of this case are not like those in *Lo-Ji Sales,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920, cited in *Leon* as an example of case falling outside of the good-faith exception because the issuing magistrate "wholly abandoned his judicial role" in such a manner that no reasonable officer could rely on the warrant. *Leon* at 923. In *Lo-Ji Sales*, a state police investigator purchased two films from an adult bookstore believing that they violated New York's obscenity laws. He submitted the films to a town justice, who viewed them and apparently concluded that they were obscene. The investigator then swore out an affidavit in support of an application for a search warrant. The application requested that the town justice accompany the investigator during the search to determine whether any other items in the store violated the law. The town justice issued the warrant, which authorized the seizure of "[t]he following items that the Court independently [on examination] has determined to be [obscene]." *Id.* at 322-323. But the list of items was added to the warrant only

*after they were seized* in the ensuing search of the bookstore, with the town justice participating with numerous law-enforcement officers.

{¶ 36} The United States Supreme Court concluded that the search warrant was invalid because the town justice "did not manifest the neutrality and detachment" required of a judicial officer under the Fourth Amendment. *Id.* at 326. "He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer." *Id.* at 327.

{¶ 37} In Hoffman's case, the deputy clerk took none of the actions condemned in *Lo-Ji Sales*. There is no evidence that the deputy clerk colluded with the detective or otherwise acted as an adjunct law-enforcement officer.

{¶ 38} Hoffman also contends that the good-faith exception should not apply because the criminal complaints were so lacking in indicia of probable cause. The state, however, maintains that because the detective's conduct in applying for the arrest warrants was consistent with binding precedent, the good-faith exception does apply. In *Davis*, ___ U.S. ___, 131 S.Ct. 2419, 180 L.Ed.2d 285, the United States Supreme Court extended the good-faith exception to circumstances in which the police conduct a search in objectively reasonable reliance on judicial precedent. It stated:

> Under our exclusionary-rule precedents, this acknowledged absence of police culpability dooms Davis's claim. Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield "meaningfu[l]" deterrence, and culpable enough to be "worth the price paid by the justice system." *Herring*, 555 U.S. at 144, 129 S.Ct. 695, [172 L.Ed.2d 496]. The conduct of the officers here was neither of these things. The officers who

conducted the search did not violate Davis's Fourth Amendment rights deliberately, recklessly, or with gross negligence. See *ibid*. Nor does this case involve any "recurring or systemic negligence" on the part of law enforcement. *Ibid.* The police acted in strict compliance with binding precedent, and their behavior was not wrongful.

*Id.* at 2428-2429.

*The Effect of* State v. Overton

{¶ 39} The state argues that the officers acted in good faith, based on interpretation of *Overton,* 6th Dist. Lucas No. L-99-1317, 2000 WL 1232422. In *Overton,* the complaint in support of the arrest warrant merely recited the statutory elements of a crime and contained no information indicating that the officer had seen the crime committed or that the officer had been informed by someone else that the subject of the warrant committed the crime. The *Overton* complaint in support of the warrant read:

> Complainant being duly sworn states that Desarie Overton defendant at Toledo, Lucas County, Ohio on or about July 10, 1998 did violate ORC # 2925.13 constituting a charge of permitting drug abuse in that the defendant, being the owner, lessee, or occupant of certain premises, did knowingly permit such premises to be used for the commission of a felony drug abuse offense, to wit: Desarie Overton being the lessee, owner, or occupant of 620 Belmont, Toledo, Ohio 43607 knowingly permitted Cocaine, a schedule two controlled substance to be sold and possessed by the occupants, there, both being in violation of

the Ohio Revised code, a felony drug abuse offense. This offense occurred in Toledo, Lucas County, Ohio.

*Id.* at *2.

The complaint was signed by a detective and was certified by a deputy municipal court clerk. In a one-paragraph analysis, the appellate court held:

The complaint in this case listed a specific code section and contained specific factual information sworn to by a fellow Toledo Police Detective. The complaint was certified by a clerk of court pursuant to Crim.R. 4. Detective Navarre [the arresting officer] testified that because he already knew appellant, he recognized her when she came to the door. *Based on the foregoing we conclude that Detective Navarre had reasonable ground to believe that the offense was committed and reasonable ground to believe that the person alleged to have committed the offense is guilty* of the violation. Therefore, the Court finds that Detective Navarre had probable cause to arrest appellant in this case.

(Emphasis added.) *Id.* at *3.

{¶ 40} We declined to accept jurisdiction of Overton's appeal. *State v. Overton*, 91 Ohio St.3d 1415, 741 N.E.2d 142 (2001). The United States Supreme Court denied the petition for a writ of certiorari. *Overton v. Ohio,* 534 U.S. 982, 122 S.Ct. 389, 151 L.Ed.2d 317 (2001). In a separate statement joined by three other justices, Justice Breyer wrote:

This "complaint" sets forth the relevant crime in general terms, it refers to Overton, and it says she committed the crime. But nowhere does it indicate *how Detective Woodson [the officer who signed the complaint] knows, or why he believes, that Overton committed the crime.*

This Court has previously made clear that affidavits or complaints of this kind do not provide sufficient support for the issuance of an arrest warrant. * * *

* * *

I consequently conclude that the city of Toledo clearly violated the Fourth Amendment warrant requirement. * * * I realize that we cannot act as a court of simple error correction and that the unpublished intermediate court decision below lacks significant value as precedent. Nonetheless, the matter has a general aspect. The highlighted print on the complaint [the defendant's name and street address] offers some support for Overton's claims that the "complaint" is a form that the police filled in with her name and address. And that fact, if true, helps to support her claim that her case is not unique. That possibility, along with the clarity of the constitutional error, convinces me that the appropriate disposition of this case is a summary reversal.

(Emphasis sic.) *Id.* at 984-986.

{¶ 41} Nevertheless, the *Overton* decision was not overruled or reversed by either a state or federal court and, therefore, it remained binding precedent in

the Sixth District.[2]  Although the clerk's independent finding of probable cause was not examined in *Overton*, the holding in *Overton* sanctioned criminal complaints that merely recited the statutory elements as valid support for arrest warrants.  Unfortunately, it appears that the clerk's office did not instruct its deputies on how to independently determine probable cause, and the omission of a probable-cause determination became the norm for at least 17 years and was unchallenged until now.

**{¶ 42}** We have already recognized the good-faith exception to the exclusionary rule when officers act in good faith upon a search warrant ultimately found to be invalid.  *Wilmoth*, 22 Ohio St.3d 251, 490 N.E.2d 1236, at paragraph one of syllabus; *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph three of the syllabus.  Today we hold that when the police conduct a search in objectively reasonable, good-faith reliance upon binding appellate precedent, the exclusionary rule does not apply.

**{¶ 43}** The dissent claims that this is not an ordinary case under *Leon* and that it is inconceivable that Toledo police officers did not realize that warrants were being issued without a probable-cause determination.  In so finding, the dissent ignores *Davis* and its holding that police conduct that is in strict compliance with binding judicial precedent satisfies the good-faith exception to the exclusionary rule.  *See Davis*, ___U.S. ___, 131 S.Ct. at 2428-2429, 180 L.Ed.2d 285.  The "ordinary" in Toledo was that arrest warrants were obtained by following a misguided practice approved in *Overton*, which now has been overruled by the Sixth District, to its credit.  In 2001, this court declined to accept

---

[2] It should be noted that one judge in the *Overton* case did consider the complaint to be defective. He dissented, noting that the officer making the complaint did not aver that he had observed the illegal activity and did not specify another source for his knowledge of the illegal activity. *Overton*, 6th Dist. Lucas No. L-99-1317, 2000 WL 1232422, *3 (Sherck, J., dissenting).

jurisdiction, and the United States Supreme Court also declined review by denying the petition for writ of certiorari. *Overton* was thus binding precedent in the Sixth District when the instant warrants were issued and executed. There is no evidence to suggest that Detective Violanti or other officers deliberately or willfully sought to violate Hoffman's Fourth Amendment rights. Under the circumstances, their actions were objectively reasonable.

{¶ 44} Ultimately, the arrest warrants must be viewed as improperly issued because although deputy clerks had a checklist to follow, a probable-cause determination was never made, and the complaint was rubber-stamped with no questions asked. The arresting officers themselves, however, had no reason to question or doubt the validity of Hoffman's warrants, and they acted in good faith in relying on them. Suppression of evidence here will not serve the purposes of the exclusionary rule.

{¶ 45} But the facts in this case are seriously disturbing. The uncontested evidence is that for at least 17 years, deputy clerks in the Toledo Municipal Court have not determined probable cause before issuing arrest warrants—a flagrant Fourth Amendment violation. It is incumbent upon the Toledo Municipal Court to amend the process for issuing arrest warrants and to conform with the requirements of the Constitution, Crim.R. 4, and case precedent before issuing a warrant. In addition, police officers, peace officers, sheriffs, and all those in law enforcement can no longer rely in good faith on any warrant issued by the Toledo Municipal Court without a neutral and detached magistrate making an independent determination of probable cause. Today's decision should be a catalyst for that court to seek new, constitutionally conforming warrants and will provide notice that any warrants that are similarly constitutionally defective can no longer be relied on or acted upon. Whatever the circumstances, at a minimum, the public is entitled to have public officials conform their conduct to constitutional standards in discharging their official duties.

**Conclusion**

**{¶ 46}** The exclusionary rule is designed to deter police misconduct that flagrantly, deliberately, or recklessly violates the Fourth Amendment. When officers act in good-faith reliance on a warrant that is later determined to be invalid, suppressing that evidence does not serve the purpose of the exclusionary rule. Good-faith reliance can be established when officers adhere to procedures established in binding precedent.

**{¶ 47}** The judgment of the Lucas County Court of Appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., concurs.

PFEIFER, J., dissents.

———————————

**O'DONNELL, J., separately concurring.**

**{¶ 48}** I agree with the majority but write separately to emphasize a point touched on by the majority opinion that raises, in my view, a matter of serious constitutional concern.

**{¶ 49}** For at least 17 years, citizens in Toledo have been subjected to an unconstitutional process for issuing arrest warrants unrecognized by those involved in the process of issuing those warrants. Nonetheless, nothing in this record indicates that officers acted in bad faith in seeking the warrant for Hoffman's arrest, and in accordance with the dictates of the United States Supreme Court, the exclusionary rule is not applicable in these circumstances.

**{¶ 50}** In this instance, the good-faith exception to the exclusionary rule applies because the Toledo police relied in good faith on errant, but binding, precedent from the Sixth District Court of Appeals upholding an arrest warrant issued by the Toledo Municipal Court without any independent finding of probable cause.

24

{¶ 51} I write separately to emphasize that the Toledo Municipal Court must amend its process for issuing arrest warrants and conform to constitutional requirements before issuing a warrant. Members of law enforcement cannot in good faith rely on any warrant issued by the Toledo Municipal Court absent an independent determination of probable cause from a neutral and detached magistrate. New and constitutionally conforming warrants must be obtained in order to conform with the Fourth Amendment, and the outstanding defective warrants can no longer be relied on or acted upon.

_____

**PFEIFER, J., dissenting.**

{¶ 52} The arrest warrants in this case were unconstitutional because they were issued even though probable cause had not been determined. See Fourth Amendment to the United States Constitution ("no Warrants shall issue, but upon probable cause"); Article I, Section 14 of the Ohio Constitution ("no warrant shall issue, but upon probable cause"). The critical issue in this case becomes, as the majority opinion well notes, whether evidence that was obtained using the constitutionally invalid arrest warrants should be suppressed.

{¶ 53} The exclusionary rule, which suppresses evidence procured unconstitutionally, is a draconian measure potentially imbued with tremendous societal costs, including the loss of reliable evidence. *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). For that reason, " 'the application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.' " *Id.* at 908, quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561. Accordingly, the rule is not to be applied to exclude evidence that was " 'obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.' " *Id.* at 909, quoting *Illinois v. Gates*, 462 U.S. 213, 255, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (White, J., concurring in judgment).

{¶ 54} These principles are based on the sound premise that the exclusionary rule is designed to deter police misconduct and, therefore, if the police obtained a warrant in objective good faith and acted within its scope, then there is "nothing to deter." *Id.* at 921. Once a magistrate issues a warrant that reasonably appears to be based on a determination of probable cause, the officer is entitled to rely on it, for " 'there is literally nothing more the policeman can do in seeking to comply with the law.' " *Id.,* quoting *Stone v. Powell*, 428 U.S. 465, 498, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring). And this is because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* Alas, this is not an ordinary case.

{¶ 55} In an ordinary case, a magistrate does not testify that she has processed thousands of arrest warrants over a period of years and that just two months previously she became familiar with the term "probable cause." The following colloquy, between the defense attorney and the magistrate from the Toledo Municipal Court, is not something that occurs in an ordinary case:

> Q. And during your 17 years of swearing in criminal complaints with requests for arrest warrants, did you know what probable cause was?
>
> A. No.
>
> Q. Had you ever made a probable cause determination?
>
> A. No.
>
> * * *
>
> Q. Did any of [your] training include making a probable cause determination?
>
> A. No, it did not.
>
> * * *

> Q. As far as you know, as a supervisor, have any of the deputy clerks made a probable cause determination?
>
> A. No.

{¶ 56} In an ordinary case, the affidavit or complaint that an officer seeking a warrant presents to a magistrate contains information that allows the issuing magistrate to determine whether probable cause exists. In this case, each of the three complaints does little more than restate the crime that is charged. The officer who presented the complaints was questioned at the suppression hearing:

> Q. You don't make any reference to what Mr. Pittmon told you other than that he was the victim?
>
> A. Yes, sir.
>
> Q. Okay. You don't make any reference to the potential existence of a video, right?
>
> A. Correct.
>
> Q. * * * [Y]ou are just saying Mr. Hoffman committed the offense?
>
> A. Yes.
>
> Q. You're not telling anybody how you've come to learn that?
>
> A. No, sir.
>
> * * *
>
> Q. Nobody asked you what the basis of your information was for claiming Mr. Hoffman committed these offenses?
>
> A. No, sir.

Q. And, in fact, when you go to execute these complaints, nobody at Toledo Municipal Court, nobody ever asks you that, do they?

A. Not that I recall anytime.

* * *

Q. And nobody has ever said how do you know that this is true, right?

A. Right.

* * *

Q. * * * And, again, nobody is asking you how you came to know these things?

A. No, sir.

Q. And the complaint itself does not reflect how you came to know these things, right?

A. Correct.

{¶ 57} These transcripts are quite extraordinary. Nothing about them strikes me as being part of an ordinary case. According to *Leon*, in an ordinary case, a police officer is not expected to question a magistrate's probable-cause determination. But, in this case, there was ample reason for the police officer to question the magistrate's ostensible probable-cause determination, because the officer presenting the complaints to obtain the warrants testified that she has never been asked to explain the basis for her belief that she had probable cause to make an arrest. So, the police officer knew that the magistrates were not exactly fastidious in requiring support for arrest warrants.

{¶ 58} The blame for these unfortunate facts should not be thrown at the magistrates. They were only following orders. Again, it is really quite extraordinary, sad really, to read the procedure that the magistrates are instructed

to follow. A memo dated March 3, 2009, instructs magistrates of their duties when "Swearing in Affidavits." It states:

> When an officer or complainant brings an affidavit to the counter, you should quickly look over the affidavit for the following items:
>
> * * *
>
> If the officer or complainant is filing the affidavit at the counter, you may let him or her know if something is missing as a courtesy. Once the affidavit is clerked in, it cannot be altered. This means you cannot call an officer to come back if something is missing. You also must accept all affidavits even if they are not complete.

{¶ 59} Far from requiring magistrates to determine probable cause, the memo implicitly instructs the magistrates to ignore probable cause. The memo instructs magistrates to "quickly look over the affidavit." Quickly? Since when is it important to quickly determine whether the Constitutions of the United States and of Ohio have been complied with? Even worse, though, is the last sentence quoted above. Magistrates are instructed that they "must accept all affidavits." No wonder they are not trained to determine probable cause. That would truly be a waste of time given the mandate to accept all affidavits.

{¶ 60} If these facts were to appear in a novel by Franz Kafka or a transcript of a trial from the totalitarian era of the Soviet Bloc, it would not be extraordinary. It might even be considered a source of amusement. But we are talking about the city of Toledo in the great state of Ohio in the United States of America. Our country is considered to be governed by the rule of law, not as a police state. But the facts of this case suggest that the residents of Lucas County

have been the subject of innumerable warrants that were issued as if by the police department itself. The warrants were issued virtually without scrutiny, and it is inconceivable that the officers did not realize this. Certainly the officer who testified in this case was aware that her requests for warrants were not subject to questioning and that her affidavits did not need to inform the magistrate of facts that could support a finding of probable cause. And in particular, in this case, the officer seeking the warrants knew that the supporting document contained nothing that would allow a magistrate to make a probable-cause determination.

{¶ 61} There is no reason to conclude that the good-faith exception should apply to the warrants in this case. The warrant requirement exists because "the detached scrutiny of a neutral magistrate * * * is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer * * *." *Leon*, 468 U.S. at 913-914, 104 S.Ct. 3405, 82 L.Ed.2d 677. Deference to magistrates, however, "is not boundless," and it is particularly unwarranted when a magistrate " 'serve[s] merely as a rubber stamp for the police.' " *Id.,* quoting *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

{¶ 62} There can be no doubt about whether the magistrate in this case served as a rubber stamp. She did. She admitted it. The police officer seeking the warrants admitted it. And the instructions the magistrate followed require her to "accept all affadavits." It is difficult to conceive of a situation better described by the term "rubber stamp."

{¶ 63} The majority opinion rightly concludes that the warrants were issued unconstitutionally. The only issue is whether the officers who acted on the warrants can be said to have acted in good faith. Based on the facts of this case, it is abundantly clear that the officers did not so act, because the requests for warrants were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in judgment). There

was nothing in the complaints except a restatement of the elements of the crime. The magistrate who issued the arrest warrants in this case was not neutral and detached. And although the magistrate did not engage in the search and arrest herself (as in *Lo-Ji Sales*), it is quite clear that she "wholly abandoned [her] judicial role" by serving as a mere rubber stamp for the police officer seeking the warrant. *Leon* at 923, discussing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).

{¶ 64} The facts of this case, including the admission that a magistrate of the Toledo Municipal Court has issued thousands of arrest warrants without ever making a probable-cause determination, convince me that suppression of the evidence in this case is necessary to deter subsequent unconstitutional behavior. Toledo police have been relying on this flagrantly unconstitutional procedure for years now. *See Overton v. Ohio*, 534 U.S. 982, 122 S.Ct. 389, 151 L.Ed.2d 317 (2001) (statement of Breyer, J.). A forceful message needs to be sent to deter similar misconduct, and suppression in this case would send that message.

{¶ 65} This analysis is largely based on decisions by the Supreme Court of the United States and on federal constitutional standards. But this case also implicates Article I, Section 14 of the Ohio Constitution. "The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. I have also independently analyzed the facts of this case pursuant to Article I, Section 14, and I conclude that the issuance of the warrants violated the Ohio Constitution. Although I could be persuaded that the

Ohio Constitution provides greater protection than the federal Constitution in a case such as this, Hoffman has not made any such claim, and it is not necessary for this court to go beyond the Fourth Amendment to justify the result I espouse.

{¶ 66} The analysis under the Ohio Constitution is similar to the analysis under the federal standards. We have held that the protections provided by Article I, Section 14 are coextensive with those provided by the Fourth Amendment. *State v. Emerson,* 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The warrants were unconstitutionally issued; therefore, the Ohio Constitution prohibits the use of any evidence procured pursuant to the warrants unless the officer seeking the warrants had a good-faith belief that the warrant was valid. For the factual reasons stated above, I conclude that the officer involved did not have a good-faith reason to believe that the requests for warrants properly presented any basis for a finding of probable cause. Accordingly, there could be no good-faith belief that the warrants were valid.

{¶ 67} I am not unmindful of the fact that evidence procured using the unconstitutionally issued arrest warrants led to Hoffman's conviction for a heinous murder and that suppression of the evidence would make it harder to prosecute him in a new trial. But that is no reason to overlook the grave constitutional violations that occurred in this case. Accordingly, I would suppress the evidence procured using the unconstitutionally issued warrants. I would reverse the judgment and remand for a new trial. I dissent.

_____

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett and Frank H. Spryszak, Assistant Prosecuting Attorneys, for appellee.

David Klucas, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General Michael DeWine.

Carol Hamilton O'Brien, Delaware County Prosecuting Attorney, and Douglas N. Dumolt, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Timothy Young. Ohio Public Defender, Stephen P. Hardwick, Assistant Public Defender; and Robert L. Tobik, Cuyahoga County Public Defender, and Jeff Gamso, Assistant Cuyahoga County Public Defender; and Matt Bangerter, urging reversal for amici curiae Office of the Ohio Public Defender, Cuyahoga County Public Defender's Office, Ohio Association of Criminal Defense Lawyers, and Maumee Valley Criminal Defense Lawyers Association.

_____

# APPENDIX A

HOUSING

STATE OF OHIO/CITY OF TO
VS.

TC. .DO MUNICIPAL COURT
.EDO, LUCAS COUNTY, OHIO

**WARRANT TO ISSUE**

Name   Brandon Hoffman

Address   333 Chapin

City  Toledo    State ohio    Zip 43609

Complaint
(Crim. R. 3 and 4)

☒TMC ☐ OHC ☐ ORC ☐ MPC **RB** 062951-11

Code No.   2913.02 A1

Charge :  Theft

Race  W  Sex   M  Wgt 220 Hgt 6'0   Hair Brown

Eye   Hazel  DOB 05/17/83  SOC  6997

RID 44606181  BCI      FBI

Classification:   M1

Alias

Complainant being duly sworn states that   Brandon Hoffman        defendant in Toledo, Lucas County, Ohio on or about   10/25/11      did violate  2913.02 A1 constituting a charge of   Theft in that:

No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: Without the consent of the owner or person authorized to give consent;

TO WIT:

The defendant did take, without the consent of the owner Lamar Pittmon, take siding, downspouts and gutters from the victims rental property at 337 Chapin Toledo, Ohio 43609 City of Toledo, Lucas County

Complainant's Signature

Complainant's Name     Det. K Violanti 1655

Complainant's Address    525 N Erie Toledo, Ohio 43604

Sworn to and subscribed in my presence this   11  day of  Nov   20 11

_____
Judge / Clerk / Deputy Clerk
Toledo Municipal Court

hereby certify this is a true copy
filed in the Toledo Municipal Court
Clerk's Office, Toledo, Ohio

Vallie Bowman-English
Clerk of Court

Deputy Clerk

## ON VIEW CHARGES ONLY EXECUTION WARRANT

Execution By Arrest or Summons

I received this warrant on        , 20   At    O'clock   .M.  On       , 20

I arrested   Brandon Hoffman       and gave him/her a copy of the complaint attached and brought

him/her to _____.
        (State the Place)

_____
(Arresting Officer, Title, ID Number

CRB-11-17858-0303

# APPENDIX B

```
                                    HOUSING
```

STATE OF OHIO/CITY OF TOLEDO
VS

EDO MUNICIPAL COURT
TOLEDO, LUCAS COUNTY, OHIO

## WARRANT

Name    BRANDON L HOFFMAN

Address    1622 SPIELBUSCH

City    TOLEDO    State    OH    Zip    43604

Complaint
(Crim. R. 3, 4, and 9)

[X] TMC  [ ] OHC  [ ] ORC  [ ] MPC  RB 062951-11

Code No.    541.03A2

Charge:    CRIMINAL DAMAGING OR ENDANGERING
RECKLESSLY CAUSE OR CREATE
SUBSTANTIAL RISK OF PHYSICAL HARM

Classification:    M 1

Race  W  Sex  M  Wgt  220  Hgt  600  Hair  BRO

Eye  HAZ  DOB  05/17/1983  SOC  ***-**-6997

RID  44606181  BCI  C094788  FBI  841210WB1

Alias    BRANDON LEE HOFFMAN

Complainant being duly sworn states that BRANDON L HOFFMAN defendant in TOLEDO, LUCAS County, OHIO on or about October 25, 2011 did violate TMC 541.03A2 constituting a charge of CRIMINAL DAMAGING OR ENDANGERING RECKLESSLY CAUSE OR CREATE SUBSTANTIAL RISK OF PHYSICAL HARM in that:

NO PERSON SHALL CAUSE, OR CREATE A SUBSTANTIAL RISK OF PHYSICAL HARM TO ANY PROPERTY OF ANOTHER WITHOUT HIS CONSENT RECKLESSLY, BY MEANS OF FIRE, EXPLOSION, FLOOD, POISON GAS, POISON, RADIOACTIVE MATERIAL, CAUSTIC OR CORROSIVE MATERIAL, OR OTHER INHERENTLY DANGEROUS AGENCY OR SUBSTANCE.

TO WIT:
The defendant did remove, dismantled siding, gutters, downspouts to a house at 337 Chapin Toledo Ohio 43609, this act caused substantial damage to the property. This was without the authorization of the owner/victim Lamarr Pittmon.City Of Toledo Lucas County

Complainant's Signature _____

Complainant's Name    VIOLANTI, KOfficer ID: 1655

Complainant's Address    525 N ERIE ST. TOLEDO, OH 43604

Sworn to and subscribed in my presence this _____ day of _____

I hereby certify this is a true copy filed in the Toledo Municipal Court Clerk's Office, Toledo, Ohio

Vallie Bowman-English,
Clerk of Court

Judge / Clerk / Deputy Clerk
TOLEDO MUNICIPAL COURT

ON VIEW CHARGES ONLY EXECUTION OF WARRANT

Execution By Arrest or Summons

I received this warrant on _____ , 20___ At_____ O'clock _____ M.

I arrested _____ and gave him/her a copy of the complaint attached and brought

him/her to _____
(State the Place)

_____
(Arresting Officer, Title, ID Number)

CRB-11-17858-0203

# APPENDIX C

HOUSING

STATE OF OHIO/CITY OF TOLE⌐
VS.

⌐LDO MUNICIPAL COURT
⌐O, LUCAS COUNTY, OHIO

**WARRANT TO ISSUE**

Name    Brandon L Hoffman

Address    333 Chapin

City   Toledo          State  Ohio     Zip  43609

☒TMC  ☐ OHC  ☐ ORC  ☐ MPC  **RB**  062951-11

Code No.    541.14 a

Charge :   House Stripping Prohibited

Classification:    M-1

Complaint
(Crim. R. 3 and 4)

Race  W   Sex   M   Wgt  6'0  Hgt  220   Hair  Brown

Eye    Hazel    DOB  05/17/83   SOC   6997

RID  44606181   BCI  C094788   FBI  841210WB1

Alias

Complainant being duly sworn states that   Brandon L Hoffman                         defendant in
Toledo, Lucas County, Ohio on or about   10/25  1                    did violate    541.14 a
constituting a charge of   House stripping prohibited
in that:

No person, without privilege to do so, shall knowingly dismantle and/or remove by any means, any fixtures, building or
construction materials attached to the interior or exterior of any vacant residential, commercial, accessory or other
structure;

TO WIT:
The defendant did, without permission or authorization from victim/owner Lamar Pittmon, take/ remove siding,
downspouts and gutters from 337 Chapin Toledo,Ohio 43609 on or about 10/25  1 City of Toledo Lucas County

Complainant's Signature _____ Ret  K Violanti 1655 _____

Complainant's Name    Det. K Violanti 1655

Complainant's Address    525 N Erie Toledo, Ohio 43604

Sworn to and subscribed in my presence this _____ 11 _____ day of _ Nov _ ,20 11

_____
Judge / Clerk / Deputy Clerk
Toledo Municipal Court

I hereby certify this is a true copy
filed in the Toledo Municipal Court
Clerk's Office, Toledo, Ohio

Vallie Bowman-English,
Clerk of Court

**ON VIEW CHARGES ONLY EXECUTION WARRANT**

Execution By Arrest or Summons

I received this warrant on _____ , 20 ___ At _____ O'clock ___.M. On _____, 20 __

I arrested   Brandon L Hoffman                    and gave him/her a copy of the complaint attached and brought

him/her to _____.
            (State the Place)

_____
(Arresting Officer, Title, ID Number

CRB-11-17858-0103