[Cite as *State v. Osborn*, 2019-Ohio-2325.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                         No. 107423

    v. :

TREVON A. OSBORN, :

    Defendant-Appellant. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-606185-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, *for appellee.*

Paul A. Mancino, Jr., *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant Trevon Osborn ("Osborn") appeals from the trial court's June 2018 findings of fact and conclusions of law denying his petition for postconviction relief without a hearing. For the reasons that follow, we affirm.

**Procedural History**

{¶ 2} In May 2016, Osborn was charged in a 12-count indictment. After pretrial negotiations with the state, in September 2016, Osborn pleaded guilty to the following amended counts of the indictment: Count 1, aggravated burglary with a three-year firearm specification; Count 3, aggravated robbery with a three-year firearm specification; Count 4, grand theft; Count 5, theft/aggravated theft; Counts 6 and 8, kidnapping; Counts 7 and 9, aggravated robbery; Count 11, improperly handling firearms in a motor vehicle; and Count 12, impersonation of certain officers. All the counts contained a forfeiture specification for a Ruger 9 mm firearm. The remaining counts of the indictment were dismissed.

{¶ 3} Sentencing occurred in October 2016. The defense and state agreed that Counts 3 through 6 and Counts 7 and 8 merged; the state elected to proceed on Counts 3 and 7, aggravated robbery with a three-year firearm specification and aggravated robbery, respectively. The trial court sentenced Osborn to an aggregate 15-year prison term that included consecutive sentences.

{¶ 4} Osborn filed a direct appeal, challenging his plea and sentence. This court affirmed the conviction and sentence. *State v. Osborn*, 8th Dist. Cuyahoga No. 105196, 2017-Ohio-8228.

{¶ 5} In December 2017, he filed a petition for postconviction relief, contending that his trial counsel was ineffective for failing to investigate the charges, which forced him to plea. Osborn also contended that his trial counsel informed him that he would only receive a nine-year prison sentence. He supported his

petition with a police incident report relative to the offenses, an indictment from another case, and his own affidavit. The court denied the petition, and in June 2018, issued findings of fact and conclusions of law. This appeal follows, with Osborn asserting the following two assignments of error:

> Defendant was denied due process of law when his post-conviction petition was denied without a hearing.

> Defendant was denied due process of law when he was not granted relief on his post-conviction petition.

## Law and Analysis

Postconviction Relief

{¶ 6} Postconviction relief is governed by R.C. 2953.21, which provides in relevant part as follows:

> (A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

> * * *

> (D) Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *

> * * *

**(F) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.** * * *

**{¶ 7}** The postconviction relief process is a civil collateral attack on a criminal judgment, in which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting the issues is not contained in the record of the petitioner's criminal conviction. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999); *State v. Carter*, 10th Dist. Franklin No. 13AP-4, 2013-Ohio-4058, ¶ 15. Postconviction review is not a constitutional right but, rather, is a narrow remedy that affords a petitioner no rights beyond those granted by statute. *Calhoun* at 281-282. A postconviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction. *State v. Hessler*, 10th Dist. Franklin No. 01AP-1011, 2002-Ohio-3321, ¶ 32.

**{¶ 8}** A petitioner is not automatically entitled to an evidentiary hearing on a petition for postconviction relief, however. *State v. Jackson*, 64 Ohio St.2d 107, 110-113, 413 N.E.2d 819 (1980). Rather, to warrant an evidentiary hearing on a petition for postconviction relief, a petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. R.C. 2953.21(D); *Hessler* at ¶ 33.

**{¶ 9}** Thus, a trial court has a statutorily imposed duty to ensure a defendant presents evidence sufficient to warrant a hearing. *State v. Cole*, 2 Ohio St.3d 112, 113, 443 N.E.2d 169 (1982). The evidence must show "there was such a

denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a); *Calhoun* at 282-283. Pursuant to R.C. 2953.21(D), a defendant's petition for postconviction relief may be denied by a trial court without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Id.* at paragraph two of the syllabus.

{¶ 10} A trial court's decision regarding a postconviction petition filed pursuant to R.C. 2953.21 will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence. *State v. Gandor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 60.

Osborn's Petition

{¶ 11} As mentioned, Osborn contended in his petition that he was denied the effective assistance of trial counsel because his trial attorney "failed to properly investigate the case and forced [him] to enter pleas of guilty in this case of which he was actually innocent." He submitted the following in support of his petition: (1) the narrative police incident report; (2) a May 2016 indictment of an individual named Terrell Osborn, that alleged offenses that occurred on the same date as appellant's; and (3) his own affidavit.

{¶ 12} The incident report gave the following facts. On the date in question, a male victim, his girlfriend, and his sister were at their home on W. 71st Street in

Cleveland.  The male and his girlfriend were in a bedroom, and the sister was in another bedroom.  The male victim told the police that he heard a loud banging on the front door, followed by a male's voice screaming, "Cleveland police, open up."

{¶ 13}  Two males then kicked in the door and charged in the bedroom where the male victim and his girlfriend were.  The girlfriend ran out of the room, into the sister's room.  One of the intruders hit the male victim over the head with a gun and told him to get to the ground.  The intruder placed a pillow over the victim's head and told him not to move or he would kill him.  The victim could hear the intruders rummaging through his belongings.  After he heard the intruders leave the house, the victim looked out the window and saw one of them flee in a Toyota Corolla.

{¶ 14}  The female victims told the police that one of the intruders, who was masked and had a gun, came in the bedroom where they were, threw a blanket over them, and told them that if they opened their eyes or removed the blanket, he would shoot them.

{¶ 15}  The next door neighbor is the one who called the police.  According to him, he was "startled from his sleep [by] loud banging and screaming" coming from the victims' house.  He looked out his window and saw two males "donkey kicking the front door" of the victims' house, and then gain entry.  The neighbor also saw a black Chevy Cruz parked across the street, and then he saw the two intruders going in and out of the victims' house with numerous bags, which they put in the Chevy Cruz.

{¶ 16} On arrival at the scene, the police saw a black Chevy Cruz in the middle of the street and saw Osborn running back and forth from the victims' house to the car. Osborn got into the passenger seat of the car and the car was driven away. The police effectuated a stop of the car and ordered the occupants, Osborn and a female driver, out. When Osborn exited, the police saw a gun "sticking out of his hooded sweatshirt." Both Osborn and the driver were arrested.

{¶ 17} The female driver told police the Cruz belonged to appellant, but he asked her to drive it because he did not have a license. Osborn told her that he needed her to take him to "drop off some dope and get paid." On the way, they picked up an unknown male and he and Osborn were talking about something "going down." She waited in the car while the males went into the victims' house. According to the driver, when the police stopped the Cruz, Osborn told her to "pull off, pull off, I'm going to go down for this."

{¶ 18} Meanwhile, the police learned that one of the victims' cell phones had been stolen from the house. Approximately two hours after the home invasion, the phone "pinged" to the area of W. 80th and Lorain in Cleveland. The police also received a call for loud music coming from the area of W. 79th and Lorain, and responded to the area. They found a vehicle with a man "slumped at the wheel"; the man was identified as Terrell Osborn, who, according to the incident report, is appellant's brother. A gun was found in the center console of the car. Although the report does not state the make or model of the car, it apparently was not a Toyota

Corolla because the report states that an "all channels broadcast" was made for the Corolla.

{¶ 19} In his affidavit, Osborn averred that his retained attorney failed to properly investigate the case, file any motions on his behalf, and would not show him any police reports, despite him requesting to see them. According to Osborn, trial counsel told him that if he entered the plea that the state was offering he would not receive any more than a nine-year sentence. Osborn averred that the "facts" of the case were wrong. For example, according to Osborn he was charged with theft of the Cruz and possessions found in the car, but the Cruz and possessions belonged to him. Further, he averred that Terrell Osborn is not his brother, and that Terrell was in an allegedly stolen vehicle.[1]

Trial Court's Judgment

{¶ 20} As mentioned, the trial court denied Osborn's petition without a hearing. In its findings of fact and conclusions of law, the court noted that it engaged in a full and proper plea colloquy with Osborn, which included advising him of all of his rights. Osborn indicated that he understood those rights that he was waiving and that no threats or promises had been made to him to induce his plea. Osborn further indicated that he was satisfied with his counsel's representation of him.

{¶ 21} The trial court further noted that Osborn was advised at the plea hearing of the maximum penalty he could receive under the plea, and he indicated

---

[1]The indictment against Terrell charged him with one count each of carrying a concealed weapon, improperly handling firearms in a motor vehicle, and having weapons while under disability.

that he understood. Moreover, the court informed Osborn that there was no promise of any particular sentence.

{¶ 22} At sentencing, the merger issue was discussed and resolved. Osborn addressed the court, admitted that he was inside the home when the crimes occurred, and apologized for his actions.

{¶ 23} After review of the "entire record and the exhibits" offered in support of Osborn's petition, the trial court found that his affidavit was "not credible." Specifically, the court found that,

> [t]he affidavit submitted by Defendant-Petitioner does not rebut the presumption that his plea of guilty to each count was made knowingly, intelligently, and voluntarily. Moreover, Defendant-Petitioner's affidavit from himself in support of his position that his plea was not made knowingly, voluntarily, and intelligently due to the ineffectiveness of his trial counsel is self-serving and contradicted by the record.

Our Review

{¶ 24} As mentioned, we will uphold the trial court's decision absent an abuse of discretion if the trial court's finding is supported by competent and credible evidence. *Gandor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 60. Upon review, we find that the decision was supported by competent and credible evidence.

{¶ 25} The trial court's determination that Osborn's affidavit was self-serving and not credible was not an abuse of discretion. Generally, self-serving affidavits submitted by a defendant in support of his or her claim for postconviction

relief are insufficient to trigger the right to a hearing or to justify granting the petition under R.C. 2953.21. *Calhoun*, 86 Ohio St.3d at 284, 714 N.E.2d 905.

{¶ 26} In accessing the credibility of affidavits, the Supreme Court in *Calhoun* provided the following relevant factors to be considered:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*Id.* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-756, 651 N.E.2d 1319 (1st Dist.1994).

{¶ 27} Here, the trial judge who considered the postconviction petition was the same judge who presided over the underlying proceedings, including the plea and sentencing. The only affidavit submitted in support of the petition was that of Osborn, who obviously was interested in the success of the petition. And the affidavit contradicted the record, including Osborn's own admission at sentencing that he was involved in the crimes, accepted responsibility for his actions, and was remorseful.

{¶ 28} We note that, at sentencing, the trial court recited the facts as contained in the police incident report. The assistant prosecuting attorney elaborated on the facts, describing the attack as "planned." She noted that there was

a third individual involved (a juvenile) who was not mentioned in the incident report, but who provided the state with a proffer of the facts. According to the juvenile, the intruders, including Osborn, planned the break-in. They drove past the house twice before going in, believing no one was home. At least one of the intruders knew the male victim to be a drug dealer and they had hoped to "get an easy score by hitting a drug dealer's house." As of the time of sentencing, the unknown male intruder had not been apprehended.

{¶ 29} On this record, we do not find that the trial court's determination that Osborn's affidavit was self-serving and not credible to be an abuse of discretion.

{¶ 30} Finally, we note that in addition to a trial court being permitted to deny a postconviction petition on the grounds of self-serving and incredible affidavits, it also may dismiss a petition for postconviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), syllabus. "Res judicata is applicable in all postconviction relief proceedings." *Id.* at 95. Under the doctrine of res judicata, a defendant who was represented by counsel is barred from raising an issue in a petition for postconviction relief if the defendant raised or could have raised the issue at trial or on direct appeal. *Id.* at syllabus; *State v. Reynolds*, 79 Ohio St.3d 158, 161, 679 N.E.2d 1131 (1997).

{¶ 31} Osborn's claims were, or could have been, raised on direct appeal. They, therefore, were barred under the doctrine of res judicata.

**{¶ 32}** On this record, we do not find that the trial court abused its discretion by denying Osborn's petition without a hearing. The two assignments of error are overruled.

**{¶ 33}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, A.J., and
RAYMOND C. HEADEN, J., CONCUR