[Cite as *State v. Martin*, 2019-Ohio-4463.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                   :

                               No. 108189

    v.                                            :

TRAMAINE E. MARTIN,                              :

    Defendant-Appellant.                  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 31, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-612220-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Tramaine E. Martin, *pro se.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Tramaine E. Martin ("Martin") appeals the trial court's decision to deny his postconviction relief petition. We affirm the trial court's decision.

## I.  Facts and Procedural History

{¶ 2}  Martin previously filed an appeal in *State v. Martin*, 8th Dist. Cuyahoga No. 106038, 2018-Ohio-1843 ("*Martin I*"), where this court affirmed his convictions.  Martin filed an appeal with the Supreme Court of Ohio, who declined to exercise jurisdiction of his appeal.  On July 25, 2017, Martin filed a petition for postconviction relief.  The trial court denied that motion.  On January 14, 2019, Martin filed a second petition for postconviction relief on different grounds.  The trial court denied Martin's second petition for postconviction relief.

{¶ 3}  The facts from this case were summarized in *Martin I*, and are as follows:

> In December 2016, Martin was charged in a five-count indictment arising from allegations by his former girlfriend's ten-year-old niece, K.B., that Martin sexually assaulted her during a sleepover at Martin's home.  The indictment charged Martin with one count of rape, one count of attempted rape, two counts of gross sexual imposition ("GSI"), and one count of kidnapping with a sexual motivation specification.
>
> In February 2017, the trial court granted counsel's request to withdraw and appointed the Cuyahoga County Public Defender to represent Martin.  In April 2017, Martin's assistant public defender moved to withdraw, advising the court that Martin wished to proceed pro se.  The trial court denied counsel's request and referred Martin to the court psychiatric clinic for an evaluation.  In May 2017, the state and Martin's assistant public defender stipulated to a report indicating Martin was competent to represent himself, and the trial court granted Martin's request to proceed pro se.
>
> In June 2017, the trial court addressed Martin's various pro se motions on the record.  Martin explained he moved to suppress evidence stemming from his arrest.  He claimed his arrest constituted an "illegal seizure" because "Cleveland Heights [police] came to Cleveland and arrested me."  The trial court denied the motion

without hearing. The trial court also denied Martin's January 2017 motion to dismiss and continued the matter to allow the state to provide a calculation of Martin's speedy trial time. A few weeks later, the trial court denied Martin's motion to dismiss, finding that 19 speedy trial days remained.

In July 2017, Martin executed a written waiver of his right to a jury trial, and the matter proceeded to trial before the bench. The following was adduced at trial.

In December 2016, K.B., along with her two siblings, had a sleep over with their cousins at the Cleveland Heights home of their aunt, K.S. Martin is the father of K.S.'s two youngest children. At the time of the sleep over, Martin was living in K.S.'s home, but slept in his own separate bedroom.

K.B. testified that during the sleep over, she was sleeping in the same bed with her 12-year-old cousin, T.M., in a third-floor bedroom. T.M. is Martin's daughter. K.B. explained she awoke in the middle of the night when she heard someone coming up the stairs. Martin came into the room, got into the bed under the covers between K.B. and T.M., and pulled down K.B.'s pants. He then attempted to "stick his private part" into K.B. from behind while holding down her arms. K.B. explained Martin was not successful because she kept her legs closed. Martin then put his tongue to K.B.'s "private part," pulled up her pants, got out of the bed, and went back downstairs.

K.B. started crying during the incident. After Martin left the room, K.B. went downstairs to use her aunt's phone to call her mother. K.B. saw Martin coming out of the second-floor bathroom on her way to her aunt's room. Martin asked K.B. "what was wrong?" because she was still crying, but she did not reply. K.B. went outside on the porch to call her mother and waited there until her mother arrived.

K.B.'s mother drove her directly to the Cleveland Heights police station, and K.B. gave an interview and a written statement. After K.B. made a police report, she returned home with her mother to wait until a sexual assault nurse examiner ("SANE examiner") became available later that morning. K.B. was examined by a SANE examiner a few hours later.

At trial, K.B.'s mother, aunt, and cousin testified, corroborating K.B.'s version of events. Notably, Martin's 12-year-old daughter, T.M.,

testified that she remembered sharing a bed with K.B. during the sleep over, and she further recalled that she had seen "my dad" Martin get in the bed and under the covers between her and K.B.

A forensic biologist and a forensic scientist both testified as to the results of the rape kit. The forensic biologist explained she conducted testing that revealed the presence of amylase on both the front and back panels of K.B.'s underwear. Amylase is found in high concentrations in saliva but can also be detected in other bodily fluids. The forensic scientist conducted a DNA analysis of the amylase found in K.B.'s underwear. The forensic scientist testified that the amylase contained a mixed DNA profile from two people, K.B. and a male. The forensic scientist explained that DNA found in the front panel "was consistent with male DNA, but the profile was too low to be able to, with any degree of confidence, say who it may * * * have been from." However, the forensic scientist further testified that the male DNA profile of the amylase swabbed from the back panel of K.B.'s underwear was "consistent with [Martin] to the degree of being rarer than one in one trillion."

Cleveland Heights Detective William Stross, Jr. ("Detective Stross") of the Cleveland Heights police department testified to his role in the investigation. Detective Stross explained that he "requested a warrant [for Martin's arrest] from [the Cleveland Heights Municipal Court] and * * * signed a complaint against [Martin.]"

After the state rested, Martin testified on his own behalf, denying any sexual conduct with K.B. However, he admitted to going upstairs to the room in which K.B. and T.M. were sleeping. He explained his purpose was to "check on [the girls]" and that he merely put his knee and hand on the bed to retrieve T.M.'s glasses, because she had fallen asleep with them on.

At the conclusion of trial, the trial court found Martin guilty of one count each of attempted rape, GSI, and kidnapping. With regard to the kidnapping count, the trial court found Martin guilty of a sexual motivation specification and that Martin had released K.B. unharmed. A few days later, the trial court sentenced Martin to an indefinite prison term of ten years to life with the possibility of parole after ten years. The trial court determined Martin to be a Tier III sex offender.

*Id.* at ¶ 2-14.

{¶ 4} Detective Michael Reese ("Detective Reese") testified that he was assigned to investigate Martin, but when he went to interview Martin at his residence, Martin was not home. Detective Reese called Martin to arrange a meeting. Martin did not show up to the scheduled meeting. At that time, Detective Reese filled out an exigent request to track Martin's cell phone. Martin's cell phone carrier sent Detective Reese real time location information from Martin's cell phone. Detective Reese used the tracking information to locate Martin in a parking lot, where Martin was arrested.

{¶ 5} In *Carpenter v. United States*, 585 U.S. _____, 138 S.Ct. 2206, 2221, 201 L.Ed.2d 507 (2018), the United States Supreme Court ruled regarding the search of Carpenter's cell phone that

> the Government must generally obtain a warrant supported by probable cause before acquiring such records. Although the "ultimate measure of the constitutionality of a governmental search is 'reasonableness,'" our cases establish that warrantless searches are typically unreasonable where "a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing." *Vernonia School Dist.* 47J v. Acton, 515 U. S. 646, 652-653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Thus, "[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U. S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430, 439 (2014).

{¶ 6} In light of this ruling and the trial court's denial of Martin's postconviction relief petition, Martin filed this appeal, and has assigned one error for our review:

> I.    The trial court denied due process of law when it denied postconviction relief, without comment.

## II. Postconviction Relief

### A. Standard of Review

{¶ 7} "A trial court's decision regarding a postconviction petition filed pursuant to R.C. 2953.21 will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 60." *State v. Osborn*, 8th Dist. Cuyahoga No. 107423, 2019-Ohio-2325, ¶ 10.

### B. Whether the Trial Court's Denial of Appellant's Postconviction Relief Denied the Appellant of Due Process

{¶ 8} "R.C. 2953.21 provides that a petition for postconviction relief must be filed within 180 days from the filing of the trial transcripts in the petitioner's direct appeal or, if a direct appeal was not pursued, 180 after the expiration of the time in which a direct appeal could have been filed." *State v. Jackson*, 8th Dist. Cuyahoga No. 99929, 2014-Ohio-927, ¶ 18. Martin was convicted in 2017. He filed his postconviction relief petition with the trial court in January 2019; therefore, Martin's petition was untimely.

{¶ 9} However,

R.C. 2953.23(A)(1) authorizes a trial court to address the merits of an untimely filed petition for postconviction relief only if both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court

recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

"'[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.'" *State v. Sidibeh*, 10th Dist. Franklin No. 12AP-498, 2013-Ohio-2309, ¶ 7, quoting *Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58.

*State v. Cody*, 8th Dist. Cuyahoga Nos. 107595, 107607, and 107664, 2019-Ohio-2824, ¶ 31-32.

{¶ 10} Martin contends that the United States Supreme Court's decision in *Carpenter v. United States*, 138 S.Ct. 2206, 201 L.Ed.2d 507 (2018), should be retroactively applied to his case. Martin also contends that if the court's decision in *Carpenter* applies to his case, then no reasonable factfinder would have found him guilty. We find that Martin's reliance on *Carpenter* is misplaced. In *Carpenter*, the police used the appellant's cell phone to demonstrate that the appellant was in the area or location where the crimes were being committed. The court ruled that "warrantless searches are typically unreasonable where 'a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing.'" *Id.*

{¶ 11} In the instant case, the police did not track Martin's cell phone to discover evidence of Martin's criminal wrongdoing. Instead, the police used the real-time cell phone information to determine Martin's current location. In *State v. Snowden*, 2d Dist. Montgomery No. 28096, 2019-Ohio-3006, Snowden relied on *Carpenter*, arguing that the police violated his constitutional rights to privacy when they used his real-time cell phone information to locate him. However, in *Carpenter*, the police used Carpenter's cell phone location to discover evidence of his criminal acts. The court in *Snowden* stated, "[a]ccordingly, the Supreme Court has not addressed the narrow issue presented in the instant case: whether police action that causes an individual's cell phone to transmit its real-time location intrudes on any reasonable expectation of privacy." *State v. Snowden*, 2d Dist. Montgomery No. 28096, 2019-Ohio-3006, ¶ 27. Likewise, as the court in *Snowden* concluded and as we conclude, Martin's reliance on *Carpenter* is misplaced.

{¶ 12} However, even if *Carpenter* could be retroactively applied to Martin's case, and the police's use of the cell phone tracking constituted a warrantless search,

> "[t]he suppression of evidence "'is not an automatic consequence of a Fourth Amendment violation.'" *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, * * * 25 N.E.3d 993, ¶ 24, quoting *Herring v. United States*, 555 U.S. 135, 137, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). "The exclusionary rule is a judicially created remedy for Fourth Amendment violations. The question whether the evidence seized in violation of the Fourth Amendment should be excluded is a separate question from whether the Fourth Amendment was violated." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, * * * 46 N.E.3d 638, ¶ 92, citing *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) and *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)."

*Snowden* at ¶ 35, quoting *State v. Burke*, 11th Dist. Trumbull Nos. 2018-T-0032 and 2018-T-0035, 2019-Ohio-1951, ¶ 29.

{¶ 13} There are certain exceptions that support warrantless searches.

> The *Carpenter* court indicates that certain case-specific exceptions may support a warrantless search of cell-site records under certain circumstances, including "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 2222, quoting *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011), quoting *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

*Snowden* at ¶ 36.

{¶ 14} In this case, a ten-year-old child accused Martin of molesting her. The police had an arrest warrant for Martin, and when Martin failed to meet with Detective Reese, the detective used Martin's real-time cell phone information to locate him, citing exigent circumstances. "An important factor in determining whether exigent circumstances exist is the gravity of the underlying offense. *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Upon review, we find that an exigency existed. *State v. Johnson*, 187 Ohio App.3d 322, 2010-Ohio-1790, 931 N.E.2d 1162 (2d Dist.)." *Snowden* at ¶ 37.

{¶ 15} Because of the gravity of the offense, Detective Reese had a reasonable concern regarding Martin's failure to appear for their meeting. We determine that the good-faith exception to the warrant requirement is applicable. Detective Reese acted with a good-faith belief that his conduct was lawful.

The good-faith exception to the exclusionary rule provides that evidence will not be suppressed "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful or when their conduct involves only simple, 'isolated' negligence." [*Davis v. United States*, 564 U.S. 238, 241, 131 S.Ct. 2419, 180 L.Ed.2d 285.] "To trigger the exclusionary rule," the U.S. Supreme Court has said, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

*Snowden* at ¶ 39.

{¶ 16} We find that *Carpenter* does not apply to Martin's case because the real-time cell phone information was not used as evidence against Martin, but rather as a means to locate him, after a warrant was issued for Martin's arrest.

{¶ 17} Additionally, Martin argues that the trial court erred when it did not make and file findings of fact and conclusions of law under R.C. 2953.21(H). However, "'a trial court need not issue findings of fact and conclusions of law, however, when it dismisses an untimely postconviction relief petition.'" *State v. Dilley*, 8th Dist. Cuyahoga No. 99680, 2013-Ohio-4480, ¶ 9, quoting *State ex rel. James v. Coyne*, 114 Ohio St.3d 45, 2007-Ohio-2716, 867 N.E.2d 837, ¶ 5. Martin's petition was untimely and did not fall under the exceptions for filing an untimely petition.

{¶ 18} Martin's sole assignment of error is overruled.

{¶ 19} Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR