[Cite as *State v. Rowland*, 2023-Ohio-4806.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

REX EASTON ROWLAND,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CO 0037**

---

Criminal Appeal from the
Municipal Court of Columbiana County, Ohio
Case No. 2022 TRC 000097

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Prosecuting Attorney, *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. James A. Vitullo*, *Atty. Ashley Saadey*, for Defendant-Appellant.

Dated: December 28, 2023

**Robb, J.**

{¶1}	Appellant, Rex Easton Rowland, appeals the Columbiana Municipal Court judgment overruling two motions, a motion to suppress evidence from the traffic stop and his motion to quash or dismiss the criminal complaint for failure to comply with Criminal Rules 3 and 4.

{¶2}	Appellant first argues the investigating officer lacked reasonable suspicion to initiate the stop because she relied exclusively on information provided by a caller, who identified himself only as "Jeff" and reported that a red truck was being driven erratically and in excess of the posted speed limit.

{¶3}	Second, Appellant asserts Ohio's Uniform Traffic Ticket does not comport with the requirements of Crim. R. 3 and 4, or the United States and Ohio Constitutions, since the ticket does not contain sufficient allegations from which probable cause for the issuance of an arrest warrant or summons may be determined.  For the following reasons, Appellant's arguments lack merit and the trial court's judgment is affirmed.

<u>Statement of Facts</u>

{¶4}	Three law enforcement officers testified at the hearing on the motion to suppress, Salem Police Department Patrolmen Samantha Collins and Matthew Cochran, and Ohio State Highway Patrol Sergeant Daniel Morrison.  Although Patrolman Collins initiated the traffic stop at issue in this appeal, each of the law enforcement officers received a dispatch regarding the informant's tips and participated in some part of the investigation and arrest.

{¶5}	On January 9, 2022, Patrolman Collins was on routine patrol in Salem, Ohio. (4/18/23 Hearing Tr. 7-8.)  She received a dispatch via her police radio alerting her to a "complainer call" regarding a red truck heading into Salem on Franklin Avenue.  (*Id.* at 8.)  Patrolman Collins testified:

> The complainer (inaudible) said that the truck was swerving all over the roadway, and at one point — I believe it was a second phone call they called in that the red truck had hit a curb at that point. So myself, and Patrolman Cochran and Patrolman (inaudible), we were out in the city attempting to find this vehicle.  So that is how the call originally came in.

<u>Case No. 22 CO 0037</u>

Patrolman Collins continued:

It was during the second phone call — I believe it was the second phone call that we realized the red truck was now on South Broadway in Salem, heading south. So I was on South Lincoln. I went ahead and turned right onto Franklin and headed down to South Broadway. And after I turned left on Broadway heading south, I observed the red truck, pulled closer so that way I could read the plate to see if it matched the description we were given, and at that point I went ahead and conducted a traffic stop.

(*Id.* at 9.)

{¶6}    The Uniform Traffic Ticket indicates that Appellant's license plate number is "PIL3201." In her incident report, Patrolman Collins writes, "[w]e were advised that the vehicle was a red Chevy Silverado OH plate PIL3209." (1/10/22 Incident Report 2.)

{¶7}    Patrolman Collins approached the truck and asked Appellant if he was aware of the reason for the traffic stop. He was not, so Patrolman Collins explained a caller had reported that he was driving erratically. (*Id.* at 10.)

{¶8}    In response to Patrolman Collins' inquiries regarding his prior activities that evening and his current destination, Appellant mumbled that he knew where he had been, but was unable to answer Patrolman Collins's question. When Patrolman Collins made eye contact with Appellant, she noted his eyes were "noticeably glossy and that there was a strong alcoholic beverage odor coming from his mouth when he was speaking." (*Id.* at 11.)

{¶9}    Patrolman Collins asked Appellant to produce his driver license, registration, and proof of insurance. Appellant fumbled around the cabin of the truck, ultimately producing only his driver license. Patrolman Collins had to ask Appellant for his registration and proof of insurance a second time. After Appellant located his registration, Patrolman Collins asked Appellant for his proof of insurance a third time. Appellant finally produced all of the requested documentation.

{¶10} When Patrolman Collins inquired whether Appellant had consumed any alcohol that evening, he admitted to drinking two beers. (*Id.* at 13.)

{¶11} Patrolman Collins' body camera footage was offered into evidence at the hearing. A nearby train obscures most of Appellant's responses on the video. In the

footage, she informs Appellant that the caller had reported he was traveling 70 miles per hour and driving erratically.

**{¶12}** Three other law enforcement officers were present at the scene, Patrolman Cochran, Sergeant Morrison, and a third officer identified only as "Patrolman Wirkner." Patrolman Collins asked Appellant to exit his vehicle, then she deferred to Sergeant Morrison to administer the field sobriety tests, due to his superior experience.

**{¶13}** Sergeant Morrison testified that his dispatcher: "[r]elayed that there was a red Chevrolet pickup truck that was traveling on State Route 11 and they were traveling all over the roadway speeding up and down and it was called in by concerned citizen named Jeff. And the license plate that was called in by Jeff was PIL3201." (*Id.* at 20.)

**{¶14}** Sergeant Morrison added his dispatcher "was talking to different police departments in the area as well to help out." The final witness at the hearing, Patrolman Cochran did not offer any testimony regarding the information provided by "Jeff."

**{¶15}** Sergeant Morrison located the vehicle and testified "two other Salem Police Department officers had stopped the vehicle on Broadway Street." (*Id.* at 21.) Sergeant Morrison testified that Patrolman Collins was in charge of the traffic stop, but asked him to administer the field sobriety tests.

**{¶16}** Sergeant Morrison administered the horizontal nystagmus test and observed all of the indices of intoxication, six out of six, including vertical nystagmus. (*Id.* at 23.) During the walk-and-turn test, Appellant was unable to remain standing heel to toe while listening to Sergeant Morrison's further instructions. Sergeant Morrison testified "at that point, [Sergeant Morrison] had to instruct [Appellant] eleven different times [to stand in the starting position with his right foot in front of his left toe] and (inaudible)." (*Id.* at 23.) Thus, Sergeant Morrison discontinued the field sobriety test.

**{¶17}** Appellant was arrested and taken to the Salem Police Department for booking and processing. Appellant refused to undergo a breath test at the station or sign any paperwork.

**{¶18}** The Uniform Traffic Ticket issued to Appellant charges him with violations of R.C. 4511.19(A)(1)(a) and (A)(2). It also contained a summons directing Appellant to appear at the Columbiana Municipal Court on January 17, 2022. The ticket concludes:

"[t]he issuing/ charging law enforcement officer states under penalty of perjury and falsification that he/she had read the above-complaint and that it is true."

**{¶19}** After the trial court overruled Appellant's motions, he entered a plea of no contest to two counts of driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a) and (2) (2nd offense), and R.C. 4511.19(A)(2)(a) (refusal with prior within 20 years). The trial court merged the convictions; imposed a jail sentence of 180 days, with 140 days suspended; imposed a $525 fine; ordered him to serve a two-year term of probation with conditions; and suspended Appellant's driver license for two years.

**{¶20}** Appellant raises two assigned errors on appeal.

<u>First Assignment of Error:  Motion to Suppress</u>

**{¶21}** Appellant's first assignment of error asserts:

"The trial court erred by overruling Appellant's motion to suppress as there was no lawful cause to stop the Appellant because the officer did not see the Defendant commit a traffic infraction, the stop being based upon an anonymous tip. The standard of review for this assignment of error is de novo."

**{¶22}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court sits as the trier of fact evaluating witness credibility and weighing the evidence, and on appeal we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Upon accepting the facts as true, we "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

> The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains almost identical language, and we have interpreted it as affording at least the same protection as the Fourth Amendment.

Case No. 22 CO 0037

*State v. Hoffman,* 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette,* 80 Ohio St.3d 234, 238–239, 1997-Ohio-343, 685 N.E.2d 762 (1997).

> "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "'[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.' " (Brackets sic.) *South Dakota v. Opperman,* 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), quoting *Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."
> *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

*State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 14.

**{¶23}** The Fourth Amendment permits brief investigative stops when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped" is involved in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690 (1981); *see Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868 (1968). The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412 (1990).

**{¶24}** In *White*, the United States Supreme Court acknowledged "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," because "ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations," and an anonymous tipster's veracity is "'by hypothesis largely unknown, and unknowable.'" *Id.* at 329, 110 S.Ct. 2412.

**{¶25}** The anonymous tipster in *White* told police that a woman would drive from one apartment building to a particular motel in a brown Plymouth station wagon with a broken right tail light. The tipster claimed the woman would be transporting cocaine. After confirming the innocuous details, officers stopped the station wagon as it neared the motel and found cocaine inside. *Id.* at 331, 110 S.Ct. 2412.

**{¶26}** The court in *White* determined the officers' corroboration of certain details made the anonymous tip sufficiently reliable to create reasonable suspicion of criminal

activity. By accurately predicting future behavior, the tipster demonstrated "a special familiarity with respondent's affairs" that in turn implied that the tipster had "access to reliable information about that individual's illegal activities." *Id.* at 332, 110 S.Ct. 2412. The *White* Court also noted that an informant who demonstrates truthfulness with respect to innocuous details is more likely to tell the truth about other things, "including the claim that the object of the tip is engaged in criminal activity." *Id.*, at 331, 110 S.Ct. 2412 (*citing Illinois v. Gates*, 462 U.S. 213, 244, 103 S.Ct. 2317 (1983)).

**{¶27}** Ten years later, in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375 (2000), the U.S. Supreme Court distinguished *White*. The *J.L.* Court determined that no reasonable suspicion arose from a bare-bones tip that a young man in a plaid shirt standing at a bus stop was carrying a gun. *Id.* 529 U.S. at 268, 120 S.Ct. 1375. The tipster neither explained how he knew about the gun, nor did he suggest he had any special familiarity with the suspect's affairs. *Id.* at 271, 120 S.Ct. 1375. Thus, police had no basis for believing "that the tipster ha[d] knowledge of concealed criminal activity." *Id.* at 272, 120 S.Ct. 1375. Furthermore, the tip included no predictions of future behavior that could be corroborated to assess the tipster's credibility. *Id.*, at 271, 120 S.Ct. 1375. Therefore, *J.L.* held the tip was insufficiently reliable to justify a stop and frisk.

**{¶28}** The most recent United States Supreme Court case to address the reliability of an anonymous tip is *Navarette v. California*, 572 U.S. 393, 398, 134 S.Ct. 1683 (2014), a 5-4 decision. There, a 911 caller reported a silver pickup truck traveling south at a certain mile marker had run the caller off the roadway. *Id.* 572 U.S. at 395, 134 S.Ct. 1683. The caller provided the truck's license-plate number. Shortly after hearing a police radio dispatch of the 911 caller's report, a highway-patrol officer spotted the truck and initiated a traffic stop. As officers approached the truck, they smelled marijuana, and a subsequent search of the truck yielded 30 pounds of marijuana. *Id.*

**{¶29}** Treating the 911 call as an anonymous tip, *Navarette* found sufficient indicia of reliability because the call reporting the dangerous driving was made immediately after it occurred, which was tantamount to a "present-sense impression" and an "excited utterance" in hearsay-exception parlance. Moreover, the tip was communicated without time for reflection, based on where the traffic stop was initiated in comparison to the mile-

marker location where the tipster reported the truck had run her off the road. *Id.* at 398-400, 134 S.Ct. 1683.

**{¶30}** The court also emphasized that because 911 calls are recorded, law enforcement can identify the number from which the telephone call originated, which deters callers from making false reports. *Id.* at 400-401, 134 S.Ct. 1683. Because the 911 caller's contemporaneous report of being run off the roadway created reasonable suspicion of the ongoing criminal offense of drunk driving, *Navarette* held that the investigatory traffic stop was reasonable. *Id.* at 401-404, 134 S.Ct. 1683. Last, the court noted the caller reported being a victim of a serious crime.

**{¶31}** The determination of reasonable suspicion based on a citizen's tip to law enforcement turns on the information known by the dispatcher, not the investigating officer, at the time of the traffic stop. Nonetheless, the investigating officers can testify at the hearing on the motion to suppress and relay the information conveyed by the dispatcher. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297-299, 720 N.E.2d 507 (1999) (facts precipitating dispatch must justify reasonable suspicion).

**{¶32}** Here, the trial court predicated its decision overruling the motion to suppress on the conclusion that "Jeff" was an "identified citizen informant," and therefore his information did not require any independent police corroboration. The trial court relied on the Ohio Supreme Court's 4-3 decision in *Maumee v. Weisner*, 87 Ohio St.3d 295, 720 N.E.2d 507 (1999). A detailed review of the Ohio Supreme Court's decision in *Weisner* provides insight into the trial court's conclusions in this case.

**{¶33}** "A telephone tip can, by itself, create reasonable suspicion justifying an investigative stop where the tip has sufficient indicia of reliability." *Id.* at 295. In ascertaining whether an informant's tip is reliable, the Ohio Supreme Court begins its analysis by placing the informant into one of three categories: (1) anonymous informant, (2) known informant (someone from the criminal world who has provided previous reliable tips), and (3) identified citizen informant. *Id.* at 300.

**{¶34}** In *Weisner*, a motorist telephoned the police to report an automobile he was following, which he suspected was being operated by a motorist under the influence of alcohol. The caller provided the make, color, and license-plate number of the suspect vehicle and described it as "weaving all over the road." *Id.* at 295. The caller identified

himself to the police dispatcher, providing his name and his mobile and home telephone numbers, and remained in constant contact with the dispatcher until the vehicle was apprehended. It is not clear whether the caller provided his first and last names, and the caller's identity was never verified.

**{¶35}** When the caller reported the suspect vehicle was stopped at a railroad crossing, the investigating officer pulled into a parking lot opposite the railroad crossing. After the train passed, the officer spotted the vehicle and radioed the dispatcher for verification. Approximately 30 to 40 seconds elapsed, during which time the officer did not observe any erratic driving or weaving. After receiving confirmation from the dispatcher, the officer initiated a traffic stop, questioned the driver, and arrested him for operating a motor vehicle while intoxicated.

**{¶36}** The Ohio Supreme Court held when "the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Id.* at 299. "The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id.* Factors considered "'highly relevant in determining the value of [the informant's] report'" are the informant's veracity, reliability, and basis of knowledge. *Id.*, *quoting Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412 (1990).

**{¶37}** Acknowledging the three categories of informants, *Weisner* noted an anonymous informant is comparatively unreliable and requires independent police corroboration to demonstrate some indicia of reliability. *Id.* at 300. By contrast, an identified citizen informant may be highly reliable and, therefore, a strong showing as to other indicia of reliability may be unnecessary. *Id.* *Weisner* also cited *Illinois v. Gates*, 462 U.S., 103 S.Ct. at 2329-2330, for the proposition that "if an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — [ ] rigorous scrutiny of the basis of his knowledge unnecessary." *Id.* at 233-234.

**{¶38}** The court in *Weisner* observed the caller's credibility was enhanced by his self-identification. The informant provided his name and two telephone numbers. Further, the informant remained in constant contact with the dispatcher. The court reasoned the

informant was unlikely to fabricate a story, which could subject him to criminal liability if he provided detailed information regarding his identity. The court similarly inferred from the caller's ongoing assistance that he recognized his real-time assistance could culminate in a face-to-face meeting with the investigating officer.

**{¶39}** The Ohio Supreme Court concluded the caller in *Weisner* qualified as an identified citizen informant whose information possessed a greater indicia of reliability than that of an anonymous informant. *Id.*, 87 Ohio St.3d at 301-302, 720 N.E.2d 507. The court emphasized its categorization of the caller did not determine the outcome of the case but was just one element in the totality of the circumstances. *Id.* at 302, 720 N.E.2d 507.

**{¶40}** Next, *Weisner* analyzed the caller's "basis of knowledge." The court recognized the caller's information was predicated on personal observation provided in real time, rather than rumor or speculation. *Id.* The court reasoned the immediacy with which the information was relayed further ensured its reliability.

**{¶41}** Finally, the court cited the caller's motivation, which it surmised was a concern for highway safety. The court inferred from the circumstances that the caller considered Weisner to be a personal threat as well as a threat to other motorists.

**{¶42}** Based on the totality of the circumstances, *Weisner* concluded the identified-citizen informant's tip merited a high degree of credibility and value. Accordingly, it determined the caller's information was sufficient to withstand the Fourth Amendment challenge without independent police corroboration. *Id.* at 302-303, 720 N.E.2d 507.

**{¶43}** Insofar as the informant's identity was never verified, the dissenting opinion concluded that the informant was more akin to an anonymous caller. The dissenting opinion likewise rejected the majority's reliance of the informant's motivation, as it was the result of supposition. The three dissenting justices opined independent corroboration of the tip in Weisner was necessary to demonstrate reasonable suspicion of criminal activity.

**{¶44}** Applying *Weisner*, the trial court here found "Jeff" was an identified citizen informant and the information he provided required no independent corroboration by law enforcement. It explained:

As relayed from dispatch to Sargeant [sic] Morrison and Patrolman Collins, the informant in this case telephoned the police as a concerned citizen and provided his name. He also provided his location by giving officers detailed description [sic] of where the vehicle in question was turning and traveling. The informant's basis of his knowledge was from his own encounter with the vehicle and the information was reliable, as the informant successfully lead [sic] police to the vehicle in question using the geographic location, make/model description, and license plate number. The informant had ongoing contact with the dispatch officer and called into dispatch on at least two occasions giving locations of the vehicle. Further, the informant provided a license plate number for the vehicle that officers were able to use to locate the vehicle. The informant also described numerous traffic infractions that would result in reasonable suspicion to stop the vehicle, including speeding, lane violations, and traveling off the roadway. In the [*Weisner*] case, the Supreme Court of Ohio discussed how courts are lenient in their assessment of the type and amount of information needed to identify a particular informant. In [*Weisner*], a caller telephoned police dispatch to report a tip, provided his name and telephone, and had continued contact with the dispatcher throughout the incident, increasing the likelihood of face-to-face contact. The [*Weisner*] court classified the tipster as an identified informant. The [*Weisner*] case also discussed a case where providing only one's occupation is sufficient to remove an informant from the anonymous category to an identified informant.

(6/24/22 Judgment 4-5.)

**{¶45}** Consistent with the Ohio Supreme Court's decision in *Weisner* and the trial court's factual findings, the informant here was sufficiently reliable and identified to constitute a known-citizen informant.

**{¶46}** Jeff twice called 911 to report erratic and dangerous driving. By placing those calls and describing the driver's reckless driving, Jeff necessarily claimed firsthand knowledge of Appellant's driving with little time to fabricate. Further, reasonable officers

Case No. 22 CO 0037

could conclude that a false informant would be reluctant to use the 911 system since 911 calls are often recorded, and false claims could result in criminal prosecution.

**{¶47}** Moreover, Jeff provided detailed information about the driver's location and description of the vehicle, including license plate number, sufficient to enable two separate law enforcement officials to locate Appellant's vehicle. The substance of information relayed by Jeff to the police was specific and reasonably believed to be reliable.

**{¶48}** Further, Sergeant Morrison referred to the caller as a "concerned citizen." Based on the information reported, i.e., speeding and erratic driving, a reasonable officer could infer that Jeff called out of concern for public safety as well as for his own safety.

**{¶49}** Accordingly, we conclude that Jeff's tip had a greater indicia of reliability than that of an anonymous informant. Upon considering the totality of the circumstances, Jeff's tip had a high degree of credibility such that it withstands Appellant's Fourth Amendment challenge without independent police corroboration. *Maumee v. Weisner*, 87 Ohio St.3d 295, 302, 720 N.E.2d 507 (1999). Thus, the traffic stop was reasonable since the tip had sufficient indicia of reliability to justify the investigative stop.

**{¶50}** Accordingly, Appellant's first assignment of error lacks merit and is overruled.

Second Assignment of Error: Motion to Quash or Dismiss

**{¶51}** Appellant's second assigned error asserts:

"The trial court erred by overruling appellant's motion to quash/dismiss because [the state] never applied to a judge, magistrate or clerk for a probable cause determination as required by the Fourth Amendment to the United States Constitution and Ohio Constitution Article 1 Section 14. The standard of review for this assignment of error is de novo."

**{¶52}** Appellant moved to quash and/or dismiss claiming the Uniform Traffic Ticket does not contain sufficient allegations to demonstrate probable cause for his arrest. Insofar as no probable cause determination was undertaken by the trial judge at his arraignment, Appellant argues his arrest violated Criminal Rules 3 and 4, and the United States and Ohio Constitutions.

Case No. 22 CO 0037

**{¶53}** Criminal Rule 4(A)(1) states an arrest warrant cannot be issued unless it appears from the complaint or affidavit filed with the complaint that there is probable cause to believe an offense has been committed and the defendant committed that offense. The United States and Ohio Constitutions provide that no warrants shall issue but upon probable cause, supported by oath or affirmation. Fourth Amendment, United States Constitution; Section 14, Article I, Ohio Constitution. The United States Supreme Court requires the complaint or affidavit filed in support of an arrest warrant to contain sufficient information to allow an independent judgment by the issuing judicial officer as to whether there is probable cause to support the issuance of a warrant.

**{¶54}** The authority issuing the warrant must assess for herself the persuasiveness of the facts relied on by the officer-complainant to establish probable cause. She should not accept without question the officer's conclusion that the person to be arrested committed the crime. A neutral and detached judicial officer, not a police officer, has the final obligation to independently determine there is probable cause to issue an arrest warrant. Accordingly, the document serving as the affidavit must disclose the complainant's grounds for believing the defendant committed the offense.

**{¶55}** Appellant cites *State v. Jones,* 7th Dist. Mahoning No. 11 MA 60, 2012-Ohio-1301, for the rule that a complaint containing mere conclusions that the defendant committed the offense described, unaccompanied by an affidavit, is insufficient under Crim.R. 4 and the United States and Ohio Constitutions to independently determine probable cause for an arrest. Appellant contends the Uniform Traffic Ticket contains conclusory allegations upon which a neutral officer could not predicate a finding of probable cause.

**{¶56}** The trial court overruled the motion to quash/dismiss citing *City of Barberton v. O'Connor*, 17 Ohio St.3d 218, 221, 478 N.E.2d 803 (1985). In *Barberton*, the Ohio Supreme Court held a Uniform Traffic Ticket properly charges a defendant with an offense when it describes the nature of the offense and refers to the ordinance or code section that gives rise to the offense. The trial court also relied on the distinctions between Crim.R. 3 and Traf.R. 3, when overruling Appellant's motion.

{¶57} We review motions to dismiss de novo. *State v. Thorn*, 7th Dist. Belmont No. 16 BE 0054, 2018-Ohio-1028, 109 N.E.3d 165, ¶ 16, citing *Columbiana v. Frost*, 7th Dist. Columbiana No. 14-CO-38, 2016-Ohio-1057, ¶ 19.

{¶58} Appellant argues the state violated Criminal Rules 3 and 4, as well as the United States and Ohio Constitutions, because no independent probable cause determination was or could have been made by a judge, clerk, or magistrate based on the conclusory nature of the Uniform Traffic Ticket.

{¶59} Criminal Rule 3, "Complaint," states:

(A) The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths.

(B) In addition, a traffic ticket that complies with Traf.R. 2 shall constitute a complaint for an alleged violation of a law, ordinance, or regulation governing the operation and use of vehicles, conduct of pedestrians in relation to vehicles, or weight, dimension, loads or equipment, or vehicles drawn or moved on highways and bridges, except for alleged violations of Title 29 of the Revised Code.

{¶60} Criminal Rule 4, "Warrant or summons; arrest," states in part:

(A) Issuance.

(1) Upon Complaint. If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.

The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. Before ruling on a request for a warrant, the issuing

authority may require the complainant to appear personally and may examine under oath the complainant and any witnesses. The testimony shall be admissible at a hearing on a motion to suppress, if it was taken down by a court reporter or recording equipment.

The issuing authority shall issue a summons instead of a warrant upon the request of the prosecuting attorney, or when issuance of a summons appears reasonably calculated to ensure the defendant's appearance.

{¶61} Appellant cites this court's decision in *State v. Jones, supra*, for the proposition that a form complaint is insufficient to establish probable cause for the issuance of an arrest warrant, where it merely recites the elements of the crime, without a disclosure regarding why it appears to the officer that the defendant performed those elements. *Id.* at ¶ 37, *citing Overton v. Ohio*, 534 U.S. 982, 122 S.Ct. 389 (2001) (Breyer, J., with three other justices concurring in a statement disagreeing with the denial of certiorari in a case involving a form complaint).

{¶62} Based on his reliance on *Jones*, Appellant appears to challenge the sufficiency of the complaint as it relates to his arrest. However, the facts in *Jones* are distinguishable. Here, Patrolman Collins executed a warrantless arrest, and therefore, the Crim.R. 4 requirements for the issuance of a warrant are inapplicable.

{¶63} Generally, an officer may make a warrantless arrest for a misdemeanor when the offense is committed in the officer's presence. *State v. Rutland*, 152 Ohio App.3d 59, 2003-Ohio-1425, 786 N.E.2d 530, ¶ 9 (7th Dist.), citing *State v. Henderson*, 51 Ohio St.3d 54, 56, 554 N.E.2d 104 (1990). Further, "a police officer has reasonable or probable cause to arrest when the events leading up to the arrest, 'viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 26, quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657 (1996). "Probable cause exists when there are facts and circumstances within the police officer's knowledge that are sufficient to warrant a reasonable belief that the suspect is committing or has committed an offense." *Id.*, citing *Beck v. Ohio*, 379 U.S. 89, 162, 85 S.Ct. 223 (1964).

{¶64} An arrest made without probable cause is constitutionally invalid. *Steele*, citing *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974). However, Appellant

does not argue that Patrolman Collins was without probable cause to execute Appellant's warrantless arrest. Insofar as the arrest in this case was warrantless, it was supported by probable cause.

**{¶65}** It does not appear Appellant is challenging the sufficiency of the complaint with respect to notice. Nonetheless, the trial court correctly recognized that Traffic Rule 3, rather than Crim.R. 3, applies to the procedural requirements in this case. *See* Crim.R. 1(C)(3) (to the extent specific procedure provided by other rules or by their nature clearly inapplicable, Criminal Rules shall not apply to procedure in cases covered by the Uniform Traffic Rules); Crim.R. 3(B)(a traffic ticket that complies with Traf. R. 2 shall constitute a complaint for an alleged violation of a law governing the operations of vehicles); Traf.R. 1(A) (providing applicability of Traffic Rules in traffic cases); *State v. Boafor*, 7th Dist. Mahoning No. 12 MA 192, 2013-Ohio-4255, ¶ 39.

**{¶66}** The trial court predicated the denial of the motion to dismiss on the Ohio Supreme Court's decision in *City of Barberton, supra*. In that case, the appellant argued the Uniform Traffic Ticket was vague since it did not identify the intoxicant for which he was being charged. *City of Barberton* held a Uniform Traffic Ticket properly charges a defendant with an offense when it describes the nature of the offense as "DWI" and refers to the ordinance that gives rise to the offense, even if it does not indicate the substance that caused the defendant's intoxication. *City of Barberton* further held the ticket effectively charges an offense even if the defendant has to make a reasonable inquiry to ascertain what exact offense is charged. Such inquiry should be made before trial by filing a request for a bill of particulars.

**{¶67}** *City of Barberton* further explained:

The purpose of the Ohio Traffic Rules is, in large part, to ensure 'simplicity and uniformity in procedure'." Traf.R. 1(B). Simplicity in procedure does not mean unfairness in procedure, or indifference to the rights of the prosecution or the defense. It means that traffic court procedure is not controlled by the stricter, more elaborate rules governing procedures in more serious cases. * * * Therefore, a complaint prepared pursuant to Traf.R. 3 needs to advise the defendant of the offense with which he is

charged in a manner that can be readily understood by a person making a reasonable attempt to understand.   * * *

*Id.* at 221.

**{¶68}** *City of Barberton* addressed notice requirements in Crim.R. 3.   More specifically, in *City of Cleveland v. Austin*, 55 Ohio App.2d 215, 380 N.E.2d 1357 (8th Dist.1978), Austin argued that Crim.R. 3 requires a complaint be given under oath.   The Eighth District recognized that Crim.R. 3 requires a sworn affidavit, but concluded it does not apply to traffic violations.   The Eighth District opined:

Traffic Rule 3 (not Criminal Rule 3) specifies the necessary procedures for the issuance of the traffic ticket. The rule provides that "(a) law enforcement officer who issues a ticket shall complete and sign the ticket, serve a copy of the completed ticket upon the defendant and, without unnecessary delay, file the court copy with the court." (The rule provides further that when an officer writes a ticket at the scene of an alleged offense, he shall not be required to rewrite the complaint in order to file it unless the original is illegible.) It does not require that the officer swear to the veracity of the complaint before an appropriate authority. However, all Ohio Uniform Traffic Tickets are subject to the following caveat: "The issuing-charging law enforcement officer states under the penalties of perjury and falsification that he has read the above complaint and that it is true." Thus, all law enforcement officers continue to attest to the accuracy of the ticket to protect the interests of the motorists. *See* 2 Shroeder-Katz, Ohio Criminal Law and Practice 516 (1974).

*Id.* at 223; *see also State v. Gibson*, 12th Dist. Clermont No. CA95-02- 014, unreported (June 19, 1995).   Further, at least one Ohio appellate court has held a probable cause hearing under Crim.R. 4 does not attach to the issuance of a traffic ticket. *State v. Douglas*, 5th Dist. Ashland No. CA-1044, 1993 WL 472888, *4.

**{¶69}** Accordingly, the execution of the warrantless arrest in this case was supported by probable cause.  To the extent Appellant is challenging the sufficiency of the complaint for notice purposes, Ohio courts have consistently concluded that Traffic Rule 3, instead of Criminal R. 3, applies to traffic violations.

**{¶70}** Appellant's second assigned error lacks merit.

Conclusion

**{¶71}** For the foregoing reasons, the trial court did not err by overruling Appellant's motion to suppress and motion to quash or dismiss. Appellant's assignments of error are overruled, and the trial court's judgment is affirmed.

Waite, J., concurs.

D'Apolito, P.J., dissent with dissenting opinion

D'Apolito, P.J., Dissent with dissenting opinion.

**{¶72}** Applying the *Weisner* analysis, that is – first determining the informant's status, which impacts the determination of his veracity and reliability, then his basis of knowledge and motivation, I find "Jeff" is an anonymous informant.

**{¶73}** The trial court opined that "Jeff" was a known-citizen informant because he provided his name and remained in continuous contact with the dispatcher. However, neither of those facts is in the record.

**{¶74}** There is no evidence "Jeff" provided his last name or his telephone number to the dispatcher. The informant in *Weisner* provided his name and two telephone numbers. Although courts have recognized emergency services is able to identify a caller through caller identification, there is similarly no evidence the dispatcher in the above-captioned appeal had that capability.

**{¶75}** Further, "Jeff" did not maintain constant contact with the dispatcher. In *Weisner, supra,* the informant remained on the telephone call until law enforcement was in place to intercept the suspect vehicle. "Jeff" placed two separate telephone calls, the second to provide updated information, that is, Appellant's current location and the fact that Appellant struck a curb. The fact that "Jeff" placed two telephone calls, rather than maintaining continuous contact with the dispatcher, negates the inference that "Jeff" recognized the foreseeability of a meeting with law enforcement.

**{¶76}** The United States Supreme Court opined in *Gates*, *supra*, "if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – [ ] rigorous scrutiny of the basis of his knowledge is +unnecessary." *Id.* at 233-234. However, I cannot conclude "Jeff' was an "unquestionably honest citizen," as "Jeff's" identity was not sufficiently established such that he would fear criminal liability if he provided fabricated information. Similarly, I cannot draw an inference from two separate telephone calls that "Jeff" was aware that his actions might result in face-to-face contact with law enforcement. Insofar as "Jeff" could not be called as a witness at the suppression hearing based on the limited information in the record, I would classify "Jeff" as an anonymous informant.

**{¶77}** With respect to "Jeff's" basis of knowledge, he provided information regarding Appellant's location in real time, and his information led investigating officers

directly to Appellant's vehicle. Both the uniform traffic ticket and Sergeant Morrison correctly stated Appellant's license plate number, even though Patrolman Collins misidentified the license plate number in her incident report prepared the following day.

{¶78} Finally, Sergeant Morrison referred to "Jeff" as a "concerned citizen." There was no testimony offered to explain the characterization. In other words, it is not clear whether the characterization was the result of information provided by the dispatcher, or simply that Sergeant Morrison surmised that "Jeff" was concerned about safety.

{¶79} As "Jeff" is an anonymous informant, who provided contemporaneous information that led law enforcement to Appellant's location, I conclude based on the totality of the circumstances that "Jeff's" information required independent police corroboration in order to demonstrate reasonable suspicion of criminal activity. In *Navarette, supra,* and *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, both the United States Supreme Court and the Ohio Supreme Court concluded an anonymous tip that led law enforcement to the suspect vehicle did not require independent corroboration of the suspect's impaired driving. However, neither of the exceptions carved out in those cases is present here.

{¶80} In *Navarette, supra*, a 5-4 majority of the United States Supreme Court concluded that an anonymous informant's tip required no independent corroboration by law enforcement, due to the fact that the unidentified caller was a victim of a crime, that is, the caller's vehicle had been forced from the roadway by the suspect vehicle. The same is not true here. "Jeff" reported moving violations suggesting that the suspect driver was intoxicated, but did not report Appellant's driving was a danger to himself or others.

{¶81} In *Tidwell, supra,* the Ohio Supreme Court predicated its conclusion that an anonymous informant's tip required limited corroboration by law enforcement to establish reasonable suspicion for a traffic stop. In so holding, the Ohio Supreme Court recognized surveillance of Tidwell's driving was not required because Tidwell was about to enter onto a highway with heavy traffic. There is no evidence in the record here to suggest that any other vehicles were on the road, including "Jeff's" vehicle, when Patrolman Collins located Appellant's vehicle. Consequently, there was no reason that Patrolman Collins could not surveil Appellant's vehicle in order to corroborate "Jeff's" information.

**{¶82}** The *Weisner* Court observed that "[c]ourts [in Ohio] have been lenient in their assessment of the type and amount of information needed to identify a particular informant." *Weisner, supra,* at 301. Nonetheless, the identity of an informant should be known or knowable to law enforcement, based on the evidence in the record, before an officer can relinquish her responsibility to demonstrate reasonable suspicion to an ordinary citizen. Concluding the stop in this case was reasonable further dilutes an already permissive standard that allows law enforcement to rely exclusively upon an anonymous informant's representations to initiate a traffic stop. Accordingly, I find the traffic stop violated Appellant's Fourth Amendment right to be free from unreasonable seizures.

**{¶83}** For the foregoing reasons, I respectfully dissent.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Municipal Court of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**